523 P.2d 1339

**Oke STROM dba Oke Strom Associates and George Hamilton, Appellants,**

v.

**William H. BLACK, Sr., Appellee.**

**No. I CA–CIV 2179.**

Court of Appeals of Arizona, Division 1.

July 5, 1974.

Charles A. Stanecker, Phoenix, for appellants.

Murphy, Posner & Franks by Edward C. Voss, III, Phoenix, for appellee.

HOWARD, Judge.

Appellee filed suit against appellants in the superior court pursuant to A.R.S. § 44–2001 et seq., to void the sale of certain securities and recover the amount of his damages together with interest, costs and reasonable attorneys' fees. The case was tried to the court, sitting without a jury, which found in appellee's favor in the sum of $20,000 plus attorneys' fees in the sum of $4,750. Appellants present the following questions for review:

"1. Does the evidence in this case establish that the appellants, Oke Strom and George Hamilton participated in and induced the sale of unregistered securities between William H. Black Sr. and Richard Rhodes, contrary to A.R.S. 44–1841 and 44–2003?

2. Does the evidence in this case establish that appellants Oke Strom and George Hamilton were guilty of fraud as

defined by A.R.S. 44–1991 as to make them liable to appellee herein?

3. Under the evidence in the case was not this transaction an exempt security under either 44–1843 or 44–1844?

4. Are thee (sic) findings of fact, conclusions of law and judgment entered thereon supported by the evidence?"

In early 1970, Rhodell Aviation, Inc. was a financially failing corporation. This conclusion was reached by the president of Rhodell, Mr. Bishop, during early 1970 as a result of analyzing financial statements he had prepared. The statements reflected that Rhodell had a negative net worth of approximately $60,000 and that it owed in excess of $30,000 to various individuals including the Internal Revenue Service. As a result of this financial condition, there were numerous threats of legal action by creditors, and the severity of the condition required the president to contemplate and discuss with corporate counsel the possibility of bankruptcy procedures.

Bishop, as a result of the bleak financial future of Rhodell met with the sole shareholder thereof, Richard Rhodes, in mid-January of 1970 to discuss the problem.

As a result of this meeting Oke Strom, doing business as Oke Strom Associates, a business broker, was contacted. Appellant George Hamilton was a salesman for Oke Strom. Both Oke Strom and George Hamilton were licensed real estate brokers but neither were licensed as security salesmen. Rhodes and Bishop entered into a listing agreement with them whereby appellants were employed to solicit persons to invest in Rhodell. As compensation for such services appellants were to receive 15% of all sums invested in Rhodell by persons so solicited. Under this listing agreement appellants were to undertake to raise the total investment in Rhodell in the amount of $100,000.

At a meeting in mid-January, 1970, Bishop advised appellants of the financial problem that Rhodell was experiencing and the fact that it was severely in debt. Mr. Bishop also provided appellants with financial statements he had prepared which reflected the negative net worth on a large accounts payable figure. At that meeting, appellant Hamilton requested Bishop to prepare a projection for Rhodell based upon infusion into it of $100,000 cash. Mr. Bishop prepared the projection and attached to his work product which he gave to appellant Hamilton was a cover sheet expressly stating that the projection was based upon the infusion of $100,000 cash and was not based on its currect economic status.

After receipt of this projection, appellants drafted and published on several occasions in the Arizona Republic around April of 1970 the following advertisement:

"Aviation minded, this is a rare opportunity to invest with some of the top men in aviation. The situation shows a conservative projection profit of $240,000.00 at the end of the next twelve months. We are seeking five investors with $20,000.00 each or one with $100,000.00 for equity position."

As a result of reading this newspaper advertisement, appellee called Strom's office and talked to Hamilton. Hamilton invited appellee to the office to discuss the advertisement. Pursuant to this invitation appellee visited Hamilton at his office where Hamilton disclosed to appellee that the company for which appellants were seeking investors as described in subject advertisement was Rhodell.

Shortly after the first meeting, Hamilton drove appellee to Rhodell where he showed him the physical plant and introduced him to Allan Heinze, vice-president of the corporation. At this meeting, Hamilton told appellee that the purchase of stock, in his opinion, was a great deal and he contemplated investing in it himself.

Several days later, appellee called Hamilton to express continuing interest in Rhodell and Hamilton stated he would arrange a meeting between appellee and Rhodes, owner of Rhodell.

The meeting occurred at Rhodes' Avondale office. Present at this meeting were

appellee, appellant Hamilton, Heinze and Rhodes. Hamilton drove appellee to this meeting and gave him the projections prepared by Bishop. However, the projection was incomplete in that the cover page prepared by Bishop was missing. At the meeting, Hamilton said nothing to appellee concerning his knowledge of the financial condition of the corporation nor the fact that the cover page, explaining that the projection was based upon the infusion of $100,000 of cash free and clear of any debt obligations had been removed.

After the meeting in Avondale, Heinze, appellee and Hamilton met and, at Hamilton's suggestion, a hand-written agreement was drafted by Hamilton providing for the sale by Rhodes of stock in Rhodell to appellee in consideration of appellee paying the sum of $20,000.[1] Hamilton received from appellee a check in the sum of $20,000. This check was turned over to Rhodell and Rhodell paid appellants the sum of $2,700 as their commission.

Shares of common stock received by appellee as a result of his paying the $20,000 were not registered with the Arizona Corporation Commission or the Securities Exchange Commission and neither appellant was registered with the State Corporation Commission to act as a securities salesman or dealer in the State of Arizona.

A.R.S. § 44–2003 provides:

"An action brought under §§ 44–2001 or 44–2002 may be brought against any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale or purchase, and such persons shall be jointly and severally liable to the purchaser or seller entitled to maintain such action."

The trial court found that appellants had violated A.R.S. § 44–1991 which declares it to be a fraudulent practice and unlawful

for a person, in connection with the sale of securities, to:

\* \* \* \* \* \*

"Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

\* \* \* \* \* \*

The trial court found that appellants violated the foregoing statute by their newspaper advertisement and by failing to divulge to appellee the true financial status of Rhodell Aviation.

■ It is appellants' position that they did not make, participate in, or induce the sale or purchases of the securities and therefore are not within the purview of A.R.S. § 44–2003. We do not agree. The evidence amply demonstrates that appellants both participated in and induced the unlawful sale of securities.[2] "The hunter who seduces the prey and leads it to the trap he has set is no less guilty than the hunter whose hand springs the snare." Lennerth v. Mendenhall, 234 F.Supp. 59, 65 (N.D.Ohio 1964).

■ Appellants' contention that there was no evidence to support a finding by the court that they were guilty of violating the provisions of A.R.S. § 44–1991 is without merit. Mr. Bishop, who acted as manager of the corporation, testified that he provided appellant Hamilton with documents which indicated that Rhodell Aviation was operating at a loss. This information was never divulged to appellee. Failure to reveal that the business is in fact operating at a loss constitutes a violation of A.R.S. § 44–1991(2). Re Amalgamated Investment, Inc., CCH Fed. Securities Law Rptr. Par. 77536 (1968). Hamilton was shown a balance sheet of the corporation as of the end of the year 1969

---

1. This agreement was never signed or accepted by Rhodes. The parties entered into another agreement which provided appellee with a job at a salary of $750 per month in addition to shares of stock in Rhodell.

2. See Annot. "Blue Sky Laws—Persons Liable" 59 A.L.R.2d 1030 (1958); 69 Am.Jur. 2d § 105 Securities Regulation—State, p. 1134 (1973).

which indicated that the company was insolvent. Failure to disclose insolvency is also a violation of A.R.S. § 44–1991(2), particularly in light of the profit projected in the advertisement. Securities & Exchange Commission v. Universal Service Association, 106 F.2d 232, 239 (7th Cir. 1939), cert. denied 308 U.S. 622, 60 S.Ct. 378, 84 L.Ed. 519 (1940).

Appellants' contention that the transaction involved was an exempt transaction is also without merit. For a secondary sale to be exempt under A.R.S. § 44–1844, the transaction must not have been made directly or indirectly for the benefit of the issuer. The testimony in this case is uncontroverted that the $20,000 went directly to and was used by Rhodell Aviation.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).