Erma DeMarco HALL (formerly Erma Thompson DeMarco) on her own behalf and on behalf of all other purchasers of securities issued by Cochise College Park, Inc., Plaintiffs,

v.

SECURITY PLANNING SERVICES, INC., etc., et al., Defendants.

No. Civ. 72–393 Phx. WPC.

United States District Court, D. Arizona.

Sept. 26, 1978.

Charles M. Duecy, of Duecy, Moore, Petsch, Robinson & Bennett, Scottsdale, Ariz., for plaintiffs.

A. Jerry Busby, of Debus, Busby & Green, Phoenix, Ariz., for defendants.

Dell Miller, in pro per.

## JUDGMENT

COPPLE, District Judge.

This complex class litigation commenced on July 19, 1972. The file is immense. There are over 1500 documents; many are hundreds of pages long. Extensive and painstaking discovery has been made in accordance with the Court's pretrial orders.

Partial but final judgments have heretofore been entered against several of the multiple Defendants in favor of Plaintiffs as a whole class and as sub-classes.

The instant Motions for Summary Judgment and other relief were filed and served on Defendants Marciano Rivera, Jr. (Rivera), his partner and associate Carl Tamuty (Tamuty) and their jointly owned business entity R & T Investment Co. (R & T) on January 5, 1977. A hearing on the Motions was set for February 29, 1977.

On January 19, 1977 an order was entered on stipulation of the parties granting Defendants Rivera, Tamuty and R & T an open extension of time within which to respond to Plaintiffs' Motions. The Stipulation and Order provided that either the Plaintiffs or Defendants would upon notice to the other parties petition to reschedule the hearings following the resolution of then pending criminal proceedings against Defendants Rivera and Tamuty in *THE UNITED STATES OF AMERICA v. CURRAN, et al.*, Criminal Cause No. CR–76–323 PHX–WEC in this district after trial or upon dismissal as to the Defendants Rivera and Tamuty.

The criminal proceeding was initiated on indictment by a grand jury based on the mail fraud, securities fraud and other criminal acts arising out of the same nucleus of facts alleged in Plaintiffs' Complaint.

On May 10, 1978, Rivera and Tamuty were found guilty by a jury of nine counts of mail fraud within the District of Arizona for their participation in the execution of the scheme and artifice to defraud that is the operating nucleus of facts as alleged by the Complaint herein.

On May 26, 1978, Plaintiffs filed a Petition to Reschedule their Motions for Summary Judgment and other relief and on June 10, 1978, the Court issued the following Order:—

"1. That the Defendants RIVERA, TAMUTY and R & T INVESTMENT CO. file with the Court and serve upon Plaintiffs, the Defendants' responsive memoranda and any other pleadings directed to or in opposition to Plaintiffs' Motions:—

(1) TO MAINTAIN ACTION AS A CLASS ACTION PURSUANT TO RULE 23(c)(4), F.R.C.P. AGAINST DEFENDANTS MARCIANO RIVERA, JR., CARL TAMUTY, R & T INVESTMENT CO., a partnership of RIVERA AND TAMUTY, and R & T INVESTMENT CO., a corporation;

(2) FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS MARCIANO RIVERA, JR., CARL TAMUTY, R & T INVESTMENT CO., a partnership of RIVERA AND TAMUTY, and R & T INVESTMENT CO., a corporation,

on or before June 26, 1978.

"2. That Plaintiffs on or before July 17, 1978 file with the Court and serve upon Defendants-Respondents any reply memoranda or pleadings, and

"3. That if either party requests oral argument, such request must be made on or before the 21st day of July, 1978, otherwise the matter will be deemed submitted."

On June 26, 1978, Defendants Rivera and Tamuty filed a Motion for Enlargement of Time within which they could respond to Plaintiffs' Motions. They asked that they be allowed until July 6, 1978 and attached a proposed Order granting Defendants' Motion for Enlargement of Time until July 6, 1978 to respond to Plaintiffs' Motions. The Motion was granted.

The Defendants Rivera, Tamuty and R & T thereafter failed to file or serve upon Plaintiffs a responsive pleading to Plaintiffs' Motions or any other pleading within the period of time as enlarged, or at all.

Plaintiffs in their Motions requested Findings and that Defendants make an accounting to the Court on all sales of Cochise securities on which they had received commissions.

The matter after July 21, 1978 was deemed submitted.

On August 14, 1978, the Court by Order of that date granted Plaintiffs' Motions in all respects under Local Rule 11(g) and on the merits.

## JURISDICTION

Sole jurisdiction is vested in this Court as to claims under 17 C.F.R. § 240.10b–5 (Rule 10b–5) and 15 U.S.C. § 78j(b). *Clark v. Watchie*, 513 F.2d 994 (9th Cir. 1975); *Hall v. Security Planning Service, Inc.*, 419 F.Supp. 405 (D.Ariz.1976); 15 U.S.C. § 78aa.

This court has pendent and ancillary jurisdiction of Plaintiffs' claims asserted under A.R.S. §§ 44–1991, 2001 and 2003 and for common law fraud under the laws of this state inasmuch as the federal claim under Rule 10b–5 is the major substantive claim, and it and all of the pendent claims derive from the common nucleus of operative facts and are such that any party would ordinarily be expected to try them in one judicial proceeding. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[1]

## BACKGROUND

Summary judgment is the exception rather than the usual in resolution of complex multi-class litigation involving thousands of Plaintiffs and scores of Defendants all of which are scattered over no less than thirty-nine states and extending into Canada and to other nations where Plaintiffs in the armed services were victims of the fraud. The record in this case, the Answers of the Defendants Rivera and Tamuty to the voluminous and penetrating discovery by Plaintiffs under Rule 33 and Rule 36 F.R.C.P., together with adjudicative facts judicially noticed pursuant to Rule 201 of Rules of Evidence, coupled with the knowing and intentional failure of Defendants Rivera, Tamuty and R & T to respond to Plaintiffs' Motions provides more than adequate uncontested proof as to all of the elements of such action as they relate to these Defendants.

The undisputed facts in this record reveal the following pattern of fraud and deceit of these Defendants in participation with other Defendants and third parties. Cochise

---

1. See also 13 C. Wright & A. Miller, Federal Practice and Procedure, § 3567 at 442–45.

College Park, Inc. was a corporation organized under the laws of the State of Arizona. It platted a real estate subdivision in Arizona known as Cochise College Park. It conducted nationwide sales campaigns to induce individuals from throughout the world to purchase lots in the subdivision. As a direct adjunct to these sales Cochise College Park marketed by itself and through others such as Defendants Rivera, Tamuty and R & T the paper that represented the alleged notes received in the lot sales transactions. The notes were purportedly signed by various lot purchasers for balances due on the lot purchase and the notes were purportedly secured by mortgages.

Rivera and Tamuty in January of 1968 on behalf of R & T executed an Agency Agreement with Cochise College Park, Inc., (Cochise), whereby Cochise made facilities available to Rivera, Tamuty and R & T as agents to sell what was purported to be "Title Insured First Mortgages" which were the notes and mortgages emanating from Cochise. These notes and mortgages sold by Rivera, Tamuty and R & T are non-exempt securities and are not registered as required by law either under the Federal Securities Laws or the laws of Arizona. *See Hall v. Security Planning Service, Inc.,* 419 F.Supp. 405 (D.Ariz.1976); *Hall v. Security Planning Service, Inc.,* 371 F.Supp. 7 (D.Ariz.1974). The agreement between Cochise and the Defendants Rivera, Tamuty and R & T was in effect until June of 1972 when Cochise went into bankruptcy under Chapter X. During this period of time Rivera, Tamuty and R & T sold securities emanating from Cochise in a total amount of over ten million dollars. The sales included the sale of securities sold to the twenty-four Nominal Plaintiffs identified in Plaintiffs' Motion for Summary Judgment.

## OPINION AND LAW

The Defendants Rivera and Tamuty were controlling persons of R & T either as partners or as its sole stockholders, directors and officers when R & T became a corporation. Each was a 50% owner of R & T as partner and later, after September 20, 1970 when R & T was incorporated, as stockholder. As such they are liable, not only personally for their own participation in the fraud but as controlling persons of R & T pursuant to 15 U.S.C. § 78t and as dealers, salesmen or agents pursuant to A.R.S. § 44–2003. Defendants Rivera and Tamuty fall within the definition of controlling persons under § 78t by the Ninth Circuit Court of Appeals. *See Hecht v. Harris, Upham & Co.,* 430 F.2d 1202 (9th Cir. 1970). *Cf. Safeway Portland Emp. Fed. Credit Union v. C. H. Wagner & Co.,* 501 F.2d 1120 (9th Cir. 1974) (applying 15 U.S.C. § 77*o*, analogous to 15 U.S.C. § 78t).

Section 10(b) of the Securities & Exchange Act and Rule 10b–5 make unlawful the use of any manipulative or deceptive device or contrivance in connection with the sale and purchase of any security on a national exchange or otherwise and Rule 10b–5 provides that

> [i]t shall be unlawful for any person directly or indirectly . . . (a) [t]o employ any device, scheme or artifice to defraud . . . or (c) [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b–5. *See Hecht, supra.* The record shows Rivera and Tamuty personally and through R & T knowingly engaged in both manipulative devices and in a scheme, artifice and device to defraud Plaintiffs in the sale of the Cochise securities. A.R.S. § 44–2003 provides that "[a]n action brought under §§ 44–2001 or 44–2002 may be brought *against any person,* including any dealer, salesman, or agent, *who made, participated in or induced the unlawful sale or purchase,* and such persons shall be jointly and severally liable to the purchaser or seller entitled to maintain such action." (emphasis added). *See Trump v. Badet,* 84 Ariz. 319, 327 P.2d 1001 (1958); *Strom v. Black,* 22 Ariz.App. 102, 523 P.2d 1339 (1974); *Baker v. Walston & Co., Inc.,* 7 Ariz.App. 590, 442 P.2d 148 (1968). In *Safeway, supra,* the Ninth Circuit held that two of the three persons who comprised the entire corporate board of directors and who

owned 94% of its stock were liable for the corporation's unlawful acts as controlling persons unless the controlling person " 'had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person [R & T in the instant case] is alleged to exist.' [citation omitted]. Those claiming the exemption have the burden of proving it. Neither offered any proof and they are not justified in resting on the mere denials of their pleadings." *Safeway, supra,* at 1124. Rivera and Tamuty acted with knowledge as knowledgeable participants in the scheme and have not offered any proof to the contrary.

Rivera, Tamuty and R & T by their own admission or as shown by uncontroverted evidence employed Stan Isom, James Calveri, Carlton Schlaegel, R. O. Hurford, John Niehaus, Carolyn Manchester, Harold Pender, Bert W. Kline, Albert Kempfert, Fred Sheffield, Warren Loucks, Dave Richards, Bill E. Reese, Robert D. Curtis, Morris Fox, Justine Curtis, Travis Godbehere, Fred Smith, Tom Manchester, J. O. Van Dyke, Tim Vickery, Wayne Ririe, David Van Wagoner, Louis Traister, Ron Frazier, Gene Kinnard, Wagner Funding Guaranteed Investors, Security Planning Services, Inc., Albert Merklin, Howard Storie, Ector Johnson, Nina Roxstrom, Jerome Savrin, Ken Perrine, H. H. Robbie, Sam Filicetti, Arthur Pender, Shelby Ostenson, Capital Exchange, Bruce Ripley and Muryel Sullins as well as others. These persons and others as agents, salesmen or otherwise in participation with and on behalf of Rivera, Tamuty and R & T engaged in the sale of Cochise securities to Plaintiffs in an amount of over ten million dollars. Rivera, Tamuty and R & T in participation with Traister, Wagner Funding, Merklin, Schlaegel, Mayerfield, Ririe, Van Wagoner, Security Planning, Perrine, Roxstrom, Savrin, Robbie, Filicetti, Lauten, Guaranteed Investors, Ostenson, Capital Exchange and Isom participated in the sale of 115 notes and mortgages (Cochise securities) to Nominal Plaintiffs as set forth in Plaintiffs' Motion for Summary Judgment and Plaintiffs' uncontroverted Affidavits.

In addition to their liability for fraud and deceit as controlling persons, Defendant R & T both as a partnership and as a corporation and Defendants Rivera and Tamuty, at least when R & T was a partnership, are liable for the acts of their agents in the unlawful and fraudulent sale of securities to Plaintiffs under the doctrine of respondeat superior. *See Walsh v. Butcher & Sherrerd,* 452 F.Supp. 80 (E.D.Penn.1978); *Plunkett v. Dominick & Dominick, Inc.,* 414 F.Supp. 885 (D.Conn.1976). In both *Plunkett* and *Butcher* the courts held that respondeat superior applies to a partnership or corporation which violates Rule 10b–5 in its conduct as a broker-dealer.

The Defendants Rivera, Tamuty and R & T not only failed to register the securities they were selling to Plaintiffs as well as they themselves not being registered as sellers, dealers or agents with the Securities and Exchange Commission and the State of Arizona, they also knowingly and fraudulently misrepresented the very nature of the notes and mortgages that they marketed to the Plaintiff Class.

In furtherance of their scheme to defraud, these Defendants either knowingly and intentionally or, if they were without actual knowledge, wantonly and recklessly represented to the Plaintiff Class untrue and false statements of material facts or omitted to state a material fact necessary to clarify a stated fact and make it not misleading. The Plaintiffs had no knowledge of the untruth or omission and could not have known of such untruth or omission by the exercise of reasonable care.

## FINDINGS

The following untruths and misleading statements were made by Rivera and Tamuty on audio tapes used by them and their agents to train R & T salesmen and to market Cochise securities to Plaintiff Class by the use of mails, telephones and other

means of communication and transportation in interstate commerce: [2]

(1) That Cochise was financially sound with assets sufficient to pay off any defaulted note (Cochise had endorsed all notes sold by Rivera, Tamuty, R & T and their agents and was financially unsound from its inception.).

(2) That every mortgage securing a note was a Title Insured First Mortgage with Transamerica Title Company, the insurer. (This statement was false in its entirety.)

(3) That R & T had specifically checked the credit ability of each notemaker/mortgagor before it would have its representatives offer the notes and mortgages for sale. (They made no checks of credit.)

(4) That Cochise sold lots only to on-site buyers, and all of the lots sold were fully developed, with roads, water and electricity in to the lots and paid for. (False in its entirety and well known to be false by Rivera and Tamuty who both visited the subdivisions and Rivera had been a lot salesman for Cochise.)

(5) That the sale of the notes furnished by Cochise, which Rivera and Tamuty said were not securities, fully complied with the Securities Act of 1933, the Securities and Exchange Act of 1934, and the Rules and Regulations of the National Association of Security Dealers. (False in its entirety.)

(6) That Tamuty represented himself as associated with Security Planning Service, Inc., one of his agents, and was himself licensed under N.A.S.D. Rules and Regulations. (This is possibly a true but misleading statement and would make Tamuty further liable for a knowing violation of N.A.S.D. Rules.)

(7) That all documents necessary to complete the transaction (i. e., sale of Cochise securities to Plaintiff Class) were properly recorded. (This is untrue as all of the notes were sold long before either the deed to the lot or mortgages securing

the note had been recorded. See *Hall v. Security Planning Services, Inc.*, 419 F.Supp. 405, 407 (D.Ariz.1976).

(8) That the lots mortgaged to secure the note (security) purchased by a Plaintiff were of sufficient value to satisfy the mortgage. (This is untrue. The lots were unimproved. The Bankruptcy Trustee could not obtain a bid of even $125 per lot on the subdivision lots although the sale price was from $2,000.00 to $11,000.00 with the average of approximately $4,000.00. Many of the sales of lots were to non-existent persons. See *Hall, supra,* at 407. Since Rivera and Tamuty claimed to check personally each lot buyer credit-wise before they sold the note purportedly signed by such lot buyer, they must have known that there was fraud.)

In addition to the false statements, misleading statements and untruths made to Plaintiffs by Rivera and Tamuty directly, by means of their audio tapes or through their agents by use of the mails, telephone and other means of transportation and communication in interstate commerce, the Defendants Rivera and Tamuty failed and omitted to tell or advise Plaintiffs of the following material facts, the knowledge of which was necessary to avoid misleading Plaintiffs and which facts were not reasonably discoverable by Plaintiffs:

(1) That many notemakers rescinded their Purchase Agreement and Cochise continued to make the note payments without advising Plaintiff/note purchaser rather than pay off the notes.

(2) That R & T was incorporated following Rivera's and Tamuty's receipt of a letter from Cochise in September of 1970 advising them of changes in note sales techniques necessary in order to (what Cochise asserted) comply with the Securities Act of 1933. (They did not ever comply with the law.)

(3) That Plaintiffs were not told that notemakers had the right to rescind their lot purchase for which the note was consideration.

**2.** Tamuty admitted the accuracy of transcript of such tape under oath as shown by Plaintiffs' discovery under Rules 33 and 36 of the Federal Rules of Civil Procedure.

(4) That neither the mortgages assigned to Plaintiff securing the note purchased nor the assignment was recorded, and his note was entirely unsecured.

## CONCLUSIONS

All of the above-described actions of untruths, misrepresentations, omissions, use of the mails, failure to register securities, and other described acts of Defendants Rivera, Tamuty and R & T were in direct contravention of the Securities Laws of the United States. In particular, the Defendants have violated and are liable under 15 U.S.C. §§ 77*l*, 77o, 77q, 78j(b), 78r, 78t, and 17 C.F.R. § 240.10b–5 (Rule 10b–5). These Defendants have violated §§ 44–1841, 1842 and § 44–1991 of Article 13, of Chapter 12 Title 44 A.R.S. and are liable under A.R.S. §§ 44–2001, 2002 and 2003. The actions of these Defendants also constitute common law fraud under the laws of the State of Arizona. *See Safeway Portland Emp. Fed. Credit Union v. C. H. Wagner & Co.*, 501 F.2d 1120 (9th Cir. 1974).

In an earlier decision this Court expressed some concern with regard to the problem of scienter under the ruling in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The instant record provides ample uncontested proof as to scienter, meaning actual intent to defraud, and all other elements of such an action as it relates to these Defendants. Since *Hochfelder, supra*, the Ninth Circuit has said the following about the scienter requirement:

> *Ernst and Ernst* [*Hochfelder*] . . . only went so far as to eliminate negligence as a basis for liability. We agree with those courts which have found that Congress intended the ambit of § 10(b) to reach a broad category of behavior, including knowing or reckless conduct.

*Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978).

Plaintiffs have alleged and given ample proof that Defendants' omissions are material.

> Rule 10b—5 makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary . . . to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." 17 C.F.R. § 240.10b—5. A statement or an omission is material if it reasonably could have been expected to influence the decision [of the buyer].

*Id.*, 576 F.2d at 1335 (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)).

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.

*Affiliated Ute Citizens, supra*, 406 U.S. at 153–54, 92 S.Ct. at 1472.

The Court has duly noted that these Defendants have not responded to Plaintiffs' Motions. Plaintiffs are entitled to summary judgment under Federal Rule of Civil Procedure 56(c) and (d) and under Local Rule 11(g).[3] The record before the Court is replete with testimony and evidence by both Plaintiffs and these Defendants by means of interrogatories, requests for admissions and affidavits, none of which have been contested or refuted by Defendants. This testimony and evidence is as complete, credible and persuasive as any that could be adduced by a protracted and prolix trial to establish Defendants' violation of the law and liability for acts alleged by Plaintiffs entitling Plaintiffs to judgment on the merits.

This record, uncontested and unrefuted and to which these Defendants have con-

---

**3.** Rule 11(g) of the Rules of Practice of the United States District Court for Arizona provides that a "failure to file a brief of memorandum of points and authorities in support of or in opposition to any motion shall constitute a consent on the part of the party failing to file such brief or memorandum to the denial or granting of the motion."

sciously and intentionally failed to provide the Court with any facts, circumstances or proof that would change the picture, shows that these Defendants' course of conduct was filled with wanton and reckless acts and with knowing and willful fraud so that punitive damages are also called for in the instant factual situation. *See Goodman v. Poland*, 395 F.Supp. 660 (D.Md.1975). *Cf. Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974) (Under the Arizona Consumer Fraud Act punitive damages can be awarded where the conduct of the wrongdoer is wanton, reckless or spiteful or where there is reckless indifference to the interests of others, although the Consumer Fraud Act does not expressly so provide).

These Plaintiffs, Defendants having been found liable under A.R.S. § 44–1991 as noted earlier, will be awarded interest as provided by A.R.S. § 44–1201 plus taxable court costs and reasonable attorneys' fees as hereinafter provided pursuant to A.R.S. § 44–2001.

This Court in its Judgment of July 16, 1976, *Hall v. Security Planning Services, Inc.*, 419 F.Supp. 405, allowed Plaintiff Class by Judgment against Defendants Richard Curran and Inland Capital, in addition to actual damages, exemplary damages, interest, taxable court costs and attorneys' fees, the sum of Eight Hundred Twenty-Six Thousand, Two Hundred Eighty-Eight ($826,288.00) Dollars as costs of accounting, title searches, counsel's fees and receivership costs incurred or paid by Plaintiffs pursuant to this Court's Order of November 17, 1973 and Judgment of January 23, 1974 for which these Defendants should be jointly and severally liable along with Defendants Richard P. Curran (Curran) and Inland Capital Corporation (Inland).

## RELIEF

All of the members of the original Plaintiff Class who purchased securities, subject of this litigation, through transactions in which Defendants Rivera, Tamuty and R & T or any one of them participated in the sale and delivery of as agent, broker, dealer, wholesaler, salesman or otherwise either directly or indirectly through others, shall and do constitute a sub-class of Plaintiffs entitled to recovery under this Judgment.

The parties listed in paragraph 1 [4] of this Judgment have already demonstrated the amounts in which they were damaged by these Defendants whose acts in participation with Defendants Richard Curran and Inland Capital Corporation caused the damages and for which these Defendants are jointly and severally liable along with Defendants Curran and Inland.

The Court has noted and is cognizant of the fact that the costs of this litigation, including the receivership, taxable court costs, attorneys' fees and expenses, have been paid or reimbursed only in part and then only out of actual damages recovered from Defendants by Plaintiffs, and provision must be made for the Defendants to directly bear the costs of this proceeding brought about by their unlawful and fraudulent actions.

On January 20, 1977, this Court granted Plaintiffs' counsel attorney's fees in the sum of 25% of total settlements on judgments received after that date and upon approval by the Court.

The Court expressly finds that there is no just reason for delay in entering this Partial Judgment as a Final Judgment.

---

**4.** The 24 Nominal Plaintiffs identified in Plaintiffs' Motions to which their Affidavits were attached hold 115 claims totaling $402,011.43. The entire identifiable members of Plaintiff Sub-Class herein including the 24 Nominal Plaintiffs noted above have submitted affidavits pursuant to this Court's Order of January 20, 1977, for 829 claims totaling $1,784,841.00. These claims were summarized by the Court-appointed C.P.A., and the computer summary appears at page 496 of Docket Item # 1503(b) filed December 19, 1977.