FILED BY CLERK

SEP 29 2009

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | |
|---|---|
| RICHARD GRAND and MARCIA GRAND, co-trustees of the R.M. Grand Revocable Living Trust, dated January 25, 1991, | ) ) ) ) |
| Plaintiffs/Appellants/Cross-Appellees, | ) ) |
| v. | ) ) ) |
| JOSEPH P. NACCHIO, a New Jersey resident; JOHN A. McMASTER, a New Jersey resident; QWEST COMMUNICATIONS INTERNATIONAL, INC., a Delaware corporation; and QWEST B.V., a foreign organization, | ) ) ) ) ) ) ) |
| Defendants/Appellees/Cross-Appellants. | ) ) ) |

2 CA-CV 2009-0014
DEPARTMENT A

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20025348

Honorable Carmine Cornelio, Judge

AFFIRMED

Munger Chadwick PLC
  By Michael J. Meehan                                              Tucson

and

Tiffany & Bosco, P.A.
  By Richard G. Himelrick                                          Phoenix
                                        Attorneys for Plaintiffs/Appellants/
                                                      Cross-Appellees

Stern & Kilcullen, LLC
  By Joel M. Silverstein                               Roseland, New Jersey

and

Perkins Coie Brown & Bain P.A.
  By Joseph E. Mais and Brian C. Lake                              Phoenix
                                        Attorneys for Defendant/Appellee/
                                                  Cross-Appellant Nacchio

Lewis & Roca LLP
  By John N. Iurino and Sivan R. Korn                              Tucson
                                        Attorneys for Defendant/Appellee/
                                                 Cross-Appellant McMaster

Fennemore Craig, P.C.
  By A. Bates Butler III and James D. Burgess                      Tucson

and

Boies, Schiller & Flexner LLP
  By Jonathan Sherman                                   Washington, D.C.
                                        Attorneys for Defendant/Appellee/
                                                   Cross-Appellant Qwest

---

E S P I N O S A, Presiding Judge.

¶1        Appellants Richard and Marcia Grand, co-trustees of the R.M. Grand

Revocable Living Trust (collectively, the Trust), challenge the trial court's dismissal of their

complaint in this securities fraud action in response to the motions to dismiss filed by

appellees Joseph P. Nacchio, John A. McMaster, and Qwest Communications International,

Inc.  We affirm.

### Factual Background and Procedural History

¶2        This case began in 2002, when the Trust filed a securities fraud action

concerning its purchase of shares in KPNQwest N.V. (KPNQwest), a joint venture between

Qwest Communications International, Inc. (Qwest) and Koninklijke KPN N.V., a European

telecommunications company.  Nacchio was Qwest's CEO and the chairman of KPNQwest's

"supervisory board."  McMaster was a Qwest employee who became KPNQwest's CEO.  In

2005, the trial court granted partial summary judgment in favor of appellees and the Trust

appealed.  This court affirmed the trial court in part and reversed in part, upholding the court's

grant of summary judgment in favor of appellees on the Trust's claims for damages, but

reversing summary judgment on the Trust's rescission claims.  *Grand v. Nacchio*, 214 Ariz. 9,

¶ 2, 147 P.3d 763, 767 (App. 2006).

¶3        Following remand, the Trust filed its third amended complaint (referred to in

this decision as the complaint), which omitted its common law and federal claims and

narrowed its theory of fraud "to focus upon [appellees]' failure to disclose a billion-dollar

fraud."  The complaint alleged the Trust had purchased over 285,000 shares of publicly traded

stock in KPNQwest. Of those shares, 30,000 were purchased as part of KPNQwest's initial public offering (IPO) in November 1999, and the remaining 255,000 were purchased in the aftermarket between December 27, 1999 and May 19, 2000.

¶4 The Trust alleged that during the time it was purchasing its KPNQwest shares, Qwest was fraudulently inflating its own earnings with fictitious revenue. The Trust claimed appellees controlled KPNQwest throughout its existence, and that if Qwest's fraudulent activities had been known to the public, "KPNQwest's stock would have [been] unmarketable." The complaint sought to rescind the Trust's KPNQwest stock purchases pursuant to A.R.S. § 44-2001(A) of the Arizona Securities Act, A.R.S. § 44-1801 through 44-2126 (the Act), under theories of both direct and secondary liability.

¶5 Appellees separately moved to dismiss the complaint. The trial court granted appellees' motions, but only as to the 255,000 shares the Trust had purchased outside of the IPO. Thereafter, the Trust filed two unsuccessful motions to reconsider and subsequently stipulated to dismiss with prejudice its remaining claims concerning the 30,000 IPO shares, thereby disposing of the complaint in its entirety. This court has jurisdiction over this appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(B). For the following reasons, we affirm.[1]

---

[1]Appellees separately moved to dismiss the complaint based on the trial court's entering a protective order at the request of the United States, which sought to prohibit the disclosure of information "relating to classified contracts, potential contracts, contacts and communications involving the U.S. Intelligence Community . . . and Qwest." Appellees

4

**Discussion**

¶6     The Trust contends the trial court erred in dismissing the complaint, arguing all three claims it had alleged were sufficiently pled so as to withstand appellees' motions to dismiss. "In reviewing motions to dismiss for failure to state a claim, we assume that the allegations in the complaint are true and determine if the plaintiff is entitled to relief under any theory of law." *Sensing v. Harris*, 217 Ariz. 261, ¶ 2, 172 P.3d 856, 857 (App. 2007). We must "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7, 189 P.3d 344, 346 (2008). However, "[b]ecause Arizona courts evaluate a complaint's well-pled facts, mere conclusory statements are insufficient to state a claim upon which relief can be granted." *Id.*

**Direct Liability**

¶7     The Trust first alleged in the complaint appellees were directly liable under §§ 44-1991(A), 44-2001(A), and 44-2003(A) of the Act. Under § 44-1991(A)(3), it is a fraudulent practice to "[e]ngage in any transaction, practice or course of business which operates or would operate as a fraud or deceit" in connection with a transaction involving the purchase or sale of securities. Much of the complaint is devoted to outlining the various ways in which appellees were involved in violations of that provision. Section 44-2001(A) allows a purchaser injured by a violation of § 44-1991(A)(3) to bring a private cause of action for

argued the Trust's claims could not be litigated or defended without disclosing information suppressed by the protective order. The court denied appellees' motions, and appellees have filed a cross-appeal concerning this ruling. We do not address appellees' cross-appeal because we affirm the court's dismissal of the complaint.

5

rescission or damages. *See Grand*, 214 Ariz. 9, ¶¶ 27-28, 147 P.3d at 772-73; *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 18, 945 P.2d 317, 329 (App. 1996). Section 44-2003(A) identifies those against whom an action pursuant to § 44-2001 may be brought:  "any person . . . who made, participated in or induced the unlawful sale or purchase." *See Standard Chartered*, 190 Ariz. at 18, 945 P.2d at 329.

¶8        Accordingly, to assert a direct claim of liability under § 44-2003(A), the Trust was required to allege that appellees either had "made, participated in or induced the unlawful sale or purchase."  Having dropped its prior claims of inducement, the Trust argues that appellees "participated" in the Trust's KPNQwest stock purchases.  This court has held that "participated in," for purposes of § 44-2003(A), means "'to take part in something'" or "'have a part or share in something.'" *Standard Chartered*, 190 Ariz. at 21, 945 P.2d at 332, *quoting Webster's Third New International Dictionary* 1646 (1969).  Therefore, the determinative issue here is whether the complaint sufficiently alleged appellees "participated in"—that is, took part in or had a share in—the Trust's aftermarket purchases of KPNQwest stock.

¶9        At the outset, the Trust did not directly allege in the complaint that appellees had "participated in" the Trust's aftermarket stock purchases.  However, the Trust contends the complaint contains factual allegations that appellees participated in the stock purchases in several ways.  First, the Trust claims the complaint alleged that appellees had "targeted" Richard Grand "with a stream of reassuring written communications," including notifications sent by electronic mail (e-mail) concerning market conditions and other information,

6

favorable analyst reports, and misleading press releases. In addition, a KPNQwest employee provided Grand with information about a broker. Appellees also "promoted KPNQwest by linking the new company to the management strength and financial growth with which Qwest was publicly perceived" and "misled the Grands and other public investors by taking part in an enterprise (KPNQwest) and activity (a fraudulent scheme) under which KPNQwest's stock traded under a deceptive banner of management integrity that did not exist." Finally, the Trust contends that the complaint alleged appellees were "information gatekeepers" who "controlled the disclosures that were made to the market."

¶10 These allegations, however, fall short of demonstrating appellees had "participated in" the Trust's purchases of KPNQwest stock for purposes of § 44-2003(A). Rather, based on the factual allegations in the complaint, the circumstances of this case are like those in *Standard Chartered*. There, this court held that an outside auditor who had supplied and approved incorrect and misleading financial information that was used by the parties to the sale had not "participated in" the stock sale for purposes of § 44-2003(A) as a matter of law. 190 Ariz. at 12, 21, 945 P.2d at 323, 332. As the trial court correctly explained, "it stretches the statutory language '. . . participate in the unlawful sale . . .' too far to impose liability" on appellees as to the aftermarket sales because to hold otherwise "would be to impose liability on all publicly traded companies and their management without any showing of inducement and only upon the showing that by creating an open market, they later 'participate in' each and every sale conducted in that market." Instead, this court held in

7

*Standard Chartered* that the private civil remedy set forth in §§ 44-2001 and 44-2003 does not apply to all violations of § 44-1991, but "only against the narrower range of persons 'who made, participated in or induced the unlawful sale.'" 190 Ariz. at 22, 945 P.2d at 333, *quoting* § 44-2003(A). "Had the legislature intended so extensive a private remedy, it could simply have done so against any person who violated section 44-1991." *Id.*[2]

¶11        The closest the complaint came to alleging that appellees "participated in" the Trust's aftermarket purchases was its allegation that a KPNQwest employee provided Grand with a referral to a broker. Notably, however, neither the complaint, its exhibits, nor Grand's declaration alleged that the Trust had used this broker to make its purchases. And even if the

---

[2]Nor does the case law the Trust relies on adequately support its argument that appellees "participated in" the Trust's aftermarket stock purchases for purposes of § 44-2003(A). The Trust relies on *Strom v. Black*, 22 Ariz. App. 102, 523 P.2d 1339 (1974), and several cases from outside this jurisdiction, none of which supports the Trust's argument either legally or factually. *See id.* at 103-04, 523 P.2d at 1340-41 (defendants participated in and induced stock sales where they solicited plaintiff investor with advertisements, personally provided him with misleading financial information, drafted agreement for sale of stock, received investor's funds, and received commission from sale); *see also Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523 & n.10 (9th Cir. 1989) (concerning personal jurisdiction in Arizona; court did not address meaning of "participate in" for purposes of § 44-2003(A) where defendants did "not specifically dispute their personal liability"); *Spears v. Lawrence Sec., Inc.*, 399 P.2d 348, 350 (Or. 1965) (defendants participated in sales of securities where they directed salespeople and instructed them on "what to tell sales prospects," placed advertisements in newspaper, and supplied sales materials); *Adamson v. Lang*, 389 P.2d 39, 41 (Or. 1964) (defendant personally loaned money to seller of securities for purpose of circumventing stock sales conditions imposed by corporation commission); *Fakhrdai v. Mason*, 696 P.2d 1164, 1165-67 (Or. Ct. App. 1985) (defendants liable as participants in stock sale where defendants were original owners of stock and were directly involved in creating underlying fraudulent stock sales agreement). To the extent the Trust relies on unpublished opinions, such citations contravene our rules, and we, therefore, disregard them. *See* Ariz. R. Civ. App. P. 28(c); *State v. Harlow*, 219 Ariz. 511, n.1, 200 P.3d 1008, 1010 n.1 (App. 2008).

8

Trust had used the broker, we nevertheless would conclude that a KPNQwest employee's providing information about a broker is too attenuated to be considered "participation in" the stock purchases by appellees for purposes of § 44-2003(A). *See Standard Chartered*, 190 Ariz. at 21, 945 P.2d at 332 (outside auditor had not "participated in" stock purchase for purposes of § 44-2003(A) as a matter of law where its actions were only "tangentially related" to sale).[3]

¶12      Some of the deficiency of the complaint results from the Trust having expressly withdrawn any reliance on an inducement theory of liability yet the complaint appears to have alleged appellees had "induced" the stock sales rather than "participated in" them.[4]  For example, the complaint alleged that appellees had provided the Trust with favorable information (such as favorable analyst reports) about KPNQwest and omitted negative information about Qwest, presumably inducing it to purchase KPNQwest stock.  As appellees argue, "Having tactically chosen to plead participation and not inducement, Plaintiffs cannot

_____

[3]The same is true for the additional allegations included in Grand's declaration, which the Trust filed with its second motion to reconsider.  The Trust explains these allegations were not included in the complaint because the Trust "did not anticipate the need to provide this evidentiary detail."  The declaration provided that a KPNQwest employee had referred Grand to a banker knowledgeable in currency exchanges and McMaster had explained to Grand how to follow KPNQwest's stock price on his computer by accessing the Dutch Stock Exchange.  The trial court refused to consider these additional allegations and struck the declaration. However, even considering these additional allegations, we still cannot conclude that the Trust had alleged that appellees "participated in" the aftermarket purchases for purposes of § 44-2003(A) for the reasons outlined above.

[4]As noted above, the Trust expressly disclaimed any reliance on an inducement theory of liability both before the trial court and on appeal.

now argue that they were encouraged by Defendants to proceed with aftermarket transactions." This distinction is significant because the legislature included the term, "participated in," in addition to "induced" in § 44-2003(A), and we "must consider 'each word . . . so that no part will be void, inert, redundant or trivial.'" *In re Newman*, 219 Ariz. 260, ¶ 15, 196 P.3d 863, 868 (App. 2008), *quoting Williams v. Thude*, 188 Ariz. 254, 259, 934 P.2d 1349, 1351 (1997). As the trial court correctly noted, "There is and must be a distinction and difference between 'participates in' and 'induce' as a matter of statutory construction, interpretation, and application."

¶13 Citing *Strom v. Black*, 22 Ariz. App. 102, 523 P.2d 1339 (1974), the Trust contends its allegations are sufficient because "participation" and "inducement" will often overlap and this "is the way the Arizona Supreme Court has interpreted section 44-2003." *Strom*, however, does nothing to advance the Trust's argument, but rather presents a factual situation wherein the defendants both participated in and induced the sale of securities. 22 Ariz. App. at 103-04, 523 P.2d at 1340-41. Specifically, the *Strom* defendants had solicited an investor with newspaper advertisements, taken him on a tour of the company, personally provided him with misleading financial information about the company, drafted an agreement for the sale of the company's stock, accepted his funds for the stock, and received a commission from the sale. *Id.* There are no comparable allegations in the complaint here. Accordingly, by disclaiming any reliance on an inducement theory and failing

10

to adequately allege that appellees had "participated in" the Trust's aftermarket purchases of KPNQwest stock, the complaint failed to state a claim for direct liability under the Act.[5]

**Secondary Liability**

¶14      The complaint also alleges secondary liability under theories of aiding and abetting and the "control person" liability statute, A.R.S. § 44-1999. The trial court determined that the "participated in" requirement from § 44-2003(A) applied to these theories as well. The Trust contends that neither theory requires allegations of the primary violator's liability under § 44-2003(A). We examine each theory below.

---

[5]We do not imply that the complaint would have survived a motion to dismiss had it relied on an inducement theory; that issue is outside the scope of this appeal. *See Stonecreek Bldg. Co. v. Shure*, 216 Ariz. 36, n.3, 162 P.3d 675, 676 n.3 (App. 2007) ("[T]his court does not give advisory opinions or decide issues it is not required to reach in order to dispose of an appeal."). However, the Trust's explicit disavowal of an inducement theory severely undercuts its argument that

> [t]o hold that these defendants cannot be liable under any circumstances as participants in after market sales would establish a rule that the company issuing the securities could never be held liable for the effects, upon purchasers in the after market, of its conduct of a device, scheme or artifice to defraud, in violation of A.R.S. § 44-1991.

Moreover, as appellees correctly observe, the Trust's theory of participatory liability "is essentially limitless" and "would punish as statutory 'participators' every insider of every public company for all violations of [§] 44-1991(A)(3) made in connection with any purchase or sale of that company's securities," including "any corporate insider who said or did anything (even in regard to *another company*) that may have persuaded the plaintiff to purchase the stock."

11

Control Person Liability

¶15 The Trust argues the trial court incorrectly determined that the requirements of § 44-2003(A) applied to the complaint's claim of "control liability" brought pursuant to § 44-1999. That section provides that "[e]very person who . . . controls any person liable for a violation of § 44-1991 . . . is liable jointly and severally with and to the same extent as the controlled person to any person to whom the controlled person is liable." § 44-1999(B). The Trust contends that appellees controlled KPNQwest and that "limiting control liability by narrowing the class of controlled persons to those enumerated in [§] 44-2003(A) is a restrictive interpretation that is not required by the language or purpose of [§] 44-1999." Instead, the Trust argues that "[p]resumptive control liability should exist whenever a control person has the power to prevent a section 44-1991(A) violation that misleads investors."

¶16 In determining that § 44-2003(A) applied to control person claims brought pursuant to § 44-1999, the trial court correctly noted the structure of this portion of the Act. Article 13, which includes §§ 44-1991 and 44-1999, is entitled "Fraudulent Practices," and enumerates and defines conduct constituting a violation of the Act. Article 14, §§ 44-2001 through 44-2005, is entitled "Civil Remedies and Liabilities," and outlines the private civil remedies available for violations of the Act. Accordingly, in order to be entitled to relief, a private plaintiff must establish liability under the "Fraudulent Practices" portion of the act, as well as comply with Article 14, the civil remedy portion of the Act. *See Standard Chartered*, 190 Ariz. at 22, 945 P.2d at 333 (relying on structure of Act to interpret the Act's

12

private civil remedy provisions and explaining that although § 44-1991 provides broad liability, the private civil remedy found in §§ 44-2001 and 44-2003 does not reach all violations of § 44-1991).[6]

¶17 Here, the Trust seeks to impose liability under § 44-1999 (contained in Article 13) and seeks as its remedy rescission under Article 14, which includes both §§ 44-2001 and 44-2003(A). Accordingly, in order to state a claim for rescission on the basis of control person liability, the complaint had to allege that the controlled person, KPNQwest, "participated in" the Trust's aftermarket purchases.[7]

¶18 Attempting to refute this conclusion, the Trust first argues that § 44-1999 "has nothing to do with" § 44-2003 and would have us read § 44-2003(A) as another independent basis for liability, rather than as a constraint on the private civil remedy permitted under § 44-2001. But such an interpretation is contrary to the holding of *Standard Chartered* as well as the way in which the Act is structured. In *Standard Chartered* this court specifically explained that § 44-2003 is a limitation on the private civil remedy, not a stand-alone basis for liability: "[T]he legislature provided a private civil remedy only against the narrower

---

[6]In *Standard Chartered* this court also noted that although the Act's private civil remedy does not apply to all violations of § 44-1991, the Act "arms the Attorney General and Corporation Commission with a range of public enforcement measures against 'any person' engaging in a violation of the Act." 190 Ariz. at 22 n.6, 945 P.2d at 333 n.6, *citing* A.R.S. §§ 44-2032, 44-2036, 44-2037.

[7]Under A.R.S. § 44-1801(16), the term "person" includes "an individual, corporation, partnership, association, joint stock company or trust, limited liability company, government or governmental subdivision or agency or any other unincorporated organization."

range of persons 'who made, participated in or induced the unlawful sale.'" 190 Ariz. at 22, 945 P.2d at 333, *quoting* § 44-2003(A). Moreover, as outlined above, both §§ 44-2001 and 44-2003 are under the private civil remedy portion of the Act, not the liability portion. *See Aranda v. Cardenas*, 215 Ariz. 210, ¶ 9, 159 P.3d 76, 80 (App. 2007) ("'[A]lthough title and section headings of statutes are not law, we may look to them for guidance.'"), *quoting Pleak v. Entrada Prop. Owners' Ass'n*, 205 Ariz. 471, ¶ 7, 73 P.3d 602, 605 (App. 2003). Finally, § 44-2003 explicitly states that it applies to actions brought under § 44-2001.

¶19        The Trust also relies on federal law in support of its argument that the requirements of § 44-2003(A) do not apply to its claim under § 44-1999(B), arguing § 44-1999 "was modeled on section 20(a) of the Exchange Act," and § 20(a) "has always been interpreted to impose liability on persons who control 10b-5 violators." Therefore, the Trust argues, "By using the language of the federal statute, it is reasonable to assume that the legislature intended [§] 44-1999(B) to be interpreted at least as broadly as federal case law interpreted 20(a)." This argument fails however because, as outlined above, it focuses only on what is required for liability and not the private civil remedy, which includes § 44-2003(A). Moreover, federal law does not have a counterpart to § 44-2003(A), and therefore the Trust's reliance on it does nothing to advance its argument. *See Standard Chartered*, 190 Ariz. at 18, 945 P.2d at 329 ("Because . . . there is no counterpart in [the federal securities] statutes to the participation-or-inducement standard of [§ 44-2003(A)], the federal statutes do not guide us here.").

14

¶20 The Trust's reliance on *Eastern Vanguard Forex, Ltd. v. Arizona Corporation Commission*, 206 Ariz. 399, 79 P.3d 86 (App. 2003), is unavailing for similar reasons. *Eastern Vanguard* did not address or even discuss the private civil remedy prong of the Act. Instead, in that case this court only considered the liability aspect of control person liability, holding the controlling person need only "have the *power* to directly or indirectly control the activities of those persons or entities liable as primary violators of §§ 44-1991 and -1992." 206 Ariz. 399, ¶ 42, 79 P.3d at 99. *Eastern Vanguard*'s failure to address the Act's private remedy provision is understandable because that case arose out of an enforcement action brought by the Arizona Corporation Commission, not a private civil action. Thus, *Eastern Vanguard* does not support the Trust's argument that it was not required to allege in the complaint that the controlled person was liable under § 44-2003(A) in order to adequately state a claim under § 44-1999(B).

¶21 Finally, the Trust claims the proportional liability provision of § 44-2003(D) supports its argument that § 44-2003(A) does not apply to claims brought under § 44-1999. Specifically, the Trust argues that the proportionate liability scheme provides for "findings on the fault of all persons who 'committed a violation' of the Securities Act that caused or contributed to the plaintiff's loss," and "require[s] the factfinder to decide whether a person 'committed a violation' and whether it was 'knowingly' done." The Trust contends that "[t]his focus on whether a violation was committed (A.R.S. § 44-2003(D)(1)) and whether the person 'knowingly committed [the] violation' (A.R.S. § 44-2003(D)(3)) evidences the

15

legislature's intent to allocate liability and fault for all [§] 44-1991(A) violations, rather than simply to those persons who can be held liable under [§] 44-2003(A)." In response, appellees argue "there is nothing inconsistent between the text of [§] 44-2003(D) and the recognition that [§] 44-1999(B) imposes control liability only on a showing of the primary *liability* of the controlled person," because § 44-2003(D) merely "ensures that innocent or negligent parties liable for a plaintiff's loss do not bear more than their proportionate share of the plaintiff's damages."

**¶22**        We agree with appellees. Based on the plain language of § 44-2003(D), it applies both to "covered person[s]," defined as defendants in private actions arising under §§ 44-1991 and 44-1992, *see* § 44-2003(P)(1), as well as "any other person the parties claim to have caused or contributed to the loss." § 44-2003(D); *see Yollin v. City of Glendale*, 219 Ariz. 24, ¶ 7, 191 P.3d 1040, 1043-44 (App. 2008) (in construing statute, we first look to plain meaning of words employed by legislature). Thus, as appellees correctly note, although "a non-defendant may have caused or contributed to a plaintiff's loss, such non-defendant is not liable to plaintiff," and therefore § 44-2003(D) "does not expand liability beyond those persons who made, participated in or induced an unlawful sale or purchase, or those who control a person who made, participated in or induced an unlawful sale or purchase." *Cf. State Farm Ins. Co. v. Premier Manufactured Sys., Inc.*, 213 Ariz. 419, ¶ 12, 142 P.3d 1232, 1236 (App. 2006) (under similar comparative fault statutory scheme, factfinder must consider

16

fault of plaintiffs, defendants, and nonparties who had contributed to injury), *aff'd*, 217 Ariz. 222, 172 P.3d 410 (2007).

¶23        Finally, the Trust contends that even if § 44-2003(A) applies to its rescission claim, it had alleged in the complaint that KPNQwest was liable under § 44-2003(A) for purposes of its control person claim.  Specifically, the Trust argues that appellees "*were* KPNQwest by virtue of controlling ownership[] and supervisory board membership," who "never disclosed the Qwest revenue fraud," "engaged in a continuous course of business under which they hid the adverse information concerning the integrity of members of KPNQwest management," and "knew that disclosure of the fraud by Qwest and Nacchio would render the KPNQwest stock worthless."  We conclude, however, that these allegations, which are substantially the same as those alleged against appellees and discussed earlier, do not constitute allegations that KPNQwest "participated in . . . the unlawful sale or purchase," § 44-2003(A), which, as is outlined above, is a necessary element of the Trust's control person theory of liability.  Accordingly, the trial court correctly dismissed the Trust's claim for control person liability.

Aiding and Abetting Liability[8]

¶24     Like its control person claim, the Trust argues the trial court erroneously applied the requirements of § 44-2003(A) to its aiding and abetting claim: "the trial court improperly restricted liability for aiding and abetting by holding that the [Trust] must show that the primary violator, KPNQwest, would be liable as a person who 'made, participated in or induced' under A.R.S. [§] 44-2003(A)." The Trust contends that a violation of § 44-1991(A) is all that is necessary to bring an action for rescission pursuant to § 44-2001(A) based upon aiding and abetting liability and argues "[t]here is no requirement that the primary violator fall within [§] 44-2003(A)."[9]

¶25     In support of its argument, the Trust relies on *State v. Superior Court*, 123 Ariz. 324, 599 P.2d 777 (1979), *overruled in part on other grounds by State v. Gunnison*, 127 Ariz. 110, 618 P.2d 604 (1980). The Trust contends that in *Superior Court* "our [s]upreme [c]ourt analyzed claims for aiding and abetting independently from claims under A.R.S. § 44-2003" by allowing "a defrauded purchaser to invoke [§] 44-2001(A)'s remedies against those who

---

[8]The parties disagree whether Arizona law continues to recognize liability for aiding and abetting a violation of § 44-1991. For the reasons outlined below, we need not decide this issue because even assuming such a theory of liability continues to exist, the Trust has failed to plead it adequately in its complaint.

[9]The Trust asserts its aiding and abetting claim is a separate and independent cause of action even though it was included in "Count One" of the complaint, entitled "Violations of A.R.S. [§]§ 44-1991(A)(3) & 44-2003(A)," which also included the Trust's claim of direct liability. The second count is entitled "Control Liability." Although appellees present convincing arguments that the Trust failed to adequately raise and plead its aiding and abetting claim, we do not address their argument because the trial court proceeded to address this claim on the merits.

18

aid[ed] and abet[ted] violations of [§] 44-1991(A)." Contrary to the Trust's assertion, however, the analysis of aiding and abetting in *Superior Court* is extremely limited and does not include a discussion of whether § 44-2003 applies to the claim, nor does it address whether secondary aiding and abetting liability may exist without also establishing the primary liability that would support a rescission claim pursuant to § 44-2001(A). 123 Ariz. at 331, 599 P.2d at 784.

¶26    In fact, in *Superior Court*, the plaintiffs appear to have stated a claim for both primary and secondary liability. The plaintiffs in *Superior Court* alleged the state defendants had aided and abetted two thrift associations, which associations purportedly had "raised over $52 million from approximately 20,000 class members of the public," used advertising and sales literature that "contained material misrepresentations and omissions," and used "false and fraudulent financial statements in order to raise monies." 123 Ariz. at 328, 599 P.2d at 781. Such allegations would appear to sufficiently assert the primary liability of the associations for having "made, participated in or induced the unlawful sale or purchase" of securities under § 44-2003(A). Accordingly, as appellees correctly note, "the *State v. Superior Court* complaint stated allegations of both primary liability (concerning the Associations that directly took money from plaintiffs/depositors) *and* secondary liability (concerning the state defendants who purportedly aided and abetted the Associations)," but the opinion did not "address [the Trust's] argument that there can be secondary aiding and abetting liability *in the absence* of primary liability."

¶27 In rejecting the Trust's argument, the trial court explained "[i]t is not enough that a plaintiff allege that a defendant aids and abets . . . another in a fraudulent practice involving the sale of securities," because in seeking a private civil remedy, the plaintiff "must also sufficiently allege that a defendant made, participated in, or induced the unlawful sale or purchase of the securities." We agree. The Trust concedes it must comply with § 44-2001 in order to rescind its stock purchases. As explained above, § 44-2003(A) specifically states that it applies to actions brought under § 44-2001 and identifies the persons against whom a rescission action under that provision may be brought. To accept the Trust's argument that § 44-2003(A) does not apply to aiding and abetting rescission claims would, as appellees point out, "gut the limitations reflected in [§] 44-2003(A) that the Arizona legislature imposed on civil liability for violations of § 44-1991" and allow "parties that are unable to satisfy the requirements of [§] 44-2003(A)" to "simply allege that the defendant aided and abetted a violation of [§] 44-1991, thereby circumventing [§] 44-2003(A)." As this court explained in *Standard Chartered*, "[T]he legislature provided a private civil remedy only against the narrower range of persons 'who made, participated in or induced the unlawful sale.'" 190 Ariz. at 22, 945 P.2d at 333, *quoting* § 44-2003(A). Accordingly, the trial court correctly determined that the Trust must establish that someone is primarily liable under § 44-2003(A) in order to state a rescission claim for aiding and abetting liability.[10]

_____

[10]Indeed, as appellees point out, the Trust appears to have admitted as much in its opposition to their motion to dismiss when it stated, "[§] 44-2003(A) is the statute that implements the rescissionary remedy for violations of Arizona's primary anti[-]fraud statute, A.R.S. § 44-1991(A)." The Trust's arguments that (1) it has no duty to allege the primary

¶28 Finally, as explained above, because the complaint fails to allege that KPNQwest—the primary violator—"participated in" the disputed stock sales for purposes of § 44-2003(A), the court correctly determined the Trust's claim of aiding and abetting failed to state a claim upon which relief could be granted.

**Disposition**

¶29 For the reasons set forth above, we affirm the trial court's dismissal of the Trust's Third Amended Complaint.

PHILIP G. ESPINOSA, Presiding Judge

CONCURRING:

PETER J. ECKERSTROM, Judge

GARYE L. VÁSQUEZ, Judge

---

violator's participation pursuant to § 44-2003(A) when bringing a rescission action based upon aiding and abetting liability and (2) the use of "may" in § 44-2003(A) demonstrates that the statute does not limit the persons against whom § 44-2001(A) actions may be brought, both appear to conflict with its concession that § 44-2003(A) applies to its direct liability claim, as evidenced by its statement in its appellate brief that "primary liability under A.R.S. § 44-2003(A) require[s] evidence of participation."