162 P.3d 675

**STONECREEK BUILDING COMPANY, INC., an Arizona corporation, Plaintiff/Counterdefendant/Appellee,**

v.

**Mavis SHURE and Lanny I. Hecker, husband and wife, Defendants/Counterclaimants/Appellants.**

**No. 1 CA–CV 06–0372.**

Court of Appeals of Arizona, Division 1, Department C.

July 26, 2007.

---

Fennemore Craig, PC By Keith L. Hendricks, Scott J. Shelley, Phoenix, Attorneys for Plaintiff/Counterdefendant/Appellee.

Dyer & Butler, LLP By Everett S. Butler, Phoenix, Attorneys for Defendants/Counterclaimants/Appellants.

## OPINION

PORTLEY, Judge.

¶ 1 Mavis Shure and Lanny I. Hecker ("Appellants") appeal from the final judgment in favor of Stonecreek Building Company and the denial of their motion for new trial. We find that the Prompt Pay Act ("the Act") was intended to ensure payment to contractors for work acceptably completed and that withholding payment on an invoice which does not charge for any allegedly defective work violates the Act.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Appellants entered into a contract with Stonecreek to construct a custom residence. During construction, Appellants complained of defective workmanship, particularly with the masonry work. Stonecreek, however, assured Appellants that payment would not be made to the masonry contractor until the masonry was corrected to their satisfaction, so they continued to make timely progress payments.

¶ 3 In April 2004, Appellants' attorney sent a letter to Stonecreek expressing dissatisfaction with the masonry work, as well as the heating, ventilation, and air conditioning system ("HVAC"). Two days later, Appellants received a Pay Application No. 8 ("invoice") from Stonecreek which was approved by the architect and billed $122,447 for a variety of work,[1] including the HVAC system. Appellants withheld payment of $100,000 of the invoice based on alleged deficiencies in masonry work and the HVAC. Consequently, Stonecreek suspended performance, and Appellants terminated the contract alleging Stonecreek failed to remedy deficiencies in construction.

¶ 4 Stonecreek filed suit against Appellants. Two days later Appellants filed suit against Stonecreek. The cases were later consolidated.

¶ 5 Among Stonecreek's claims was that Appellants violated the Act[2] by withholding payment for work that was not listed in the invoice. Stonecreek further alleged that requisite approval of the invoice was satisfied by Appellants, either because of the architect's certification or because it was "deemed approved" because of Appellants' failure to file a timely written objection.[3]

---

1. Specifically, the invoice billed for site supervision; project management; trash removal; temporary facilities/utilities; excavation, backfilling and grading; metal trellis; rough carpentry—lumber; rough carpentry-labor; roofing; roof accessories; HVAC system; plumbing; electrical system; profit/overhead; and sales tax.

2. Ariz.Rev.Stat. ("A.R.S.") §§ 32–1129 to – 1129.06 (2004).

3. Appellants argue that Stonecreek is precluded from making this argument because the settlement agreement reached by the parties stipulates that the sole issue is the application of the

¶6 Stonecreek filed a motion for partial summary judgment which the trial court granted. Although the court found the April 2004 letter satisfied the statutory requirement of a timely, written objection, it also found that under the Act an owner can withhold payment only to the extent that it disapproves work included in the invoice. The trial court held Appellants were entitled to withhold $26,781 for the disputed HVAC work because, arguably, the work on the invoice was the same as the HVAC work identified in Appellants' letter. The parties eventually resolved their other claims by a settlement agreement.

¶7 In its final judgment, the court awarded Stonecreek $73,219 as damages for the Act violation, which Appellants now appeal, along with the denial of their motion for new trial. We have jurisdiction pursuant to A.R.S. §§ 12–2101(B) and (F) (2003).

## DISCUSSION

■ ¶8 The parties stipulated that the sole issue on appeal is whether Appellants were permitted under the Act to withhold payment on an invoice for alleged problems with the masonry work even though the invoice did not request payment for masonry work.

¶9 The Prompt Pay Act, A.R.S. §§ 32–1129 to –1129.06, provides in part that an owner shall make progress payments to a contractor "on the basis of a duly certified and approved billing or estimate of the work performed and the materials supplied during the preceding thirty day billing cycle." A.R.S. § 32–1129.01(A).[4] Those payments are to be made within seven days after the date the billing or estimate is certified and approved. *Id.* A construction contract cannot alter the rights of a contractor, subcontractor or supplier to receive "prompt and timely progress payments" as provided in the Act. A.R.S. § 32–1129.01(J).

¶10 Appellants argue that they were entitled to withhold payments for work other than that billed in the invoice. Specifically, the Act provides:

A billing or estimate shall be deemed approved and certified fourteen days after the owner receives the billing or estimate, unless before that time the owner or the owner's agent prepares and issues a written statement detailing those items in the billing or estimate that are not approved and certified. An owner may decline to approve and certify a billing or estimate or portion of a billing or estimate for unsatisfactory job progress, defective construction work or materials not remedied, disputed work or materials, failure to comply with other material provisions of the construction contract, third party claims filed or reasonable evidence that a claim will be filed, failure of the contractor or a subcon-

---

Prompt Pay Act. Appellants cite *Wolf Corp. v. Louis,* 11 Ariz.App. 352, 355, 464 P.2d 672, 675 (1970), as authority we are bound by the stipulation as to the issue on appeal. We disagree. *Wolf* held that the parties were bound by a stipulation of facts presented to the trial court. *Id.* This court is not bound by a stipulation of the parties as to the law and the issues which we may address on appeal. *See* A.R.S. § 12–2103 (2003); *cf. Miller v. Bd. of Supervisors,* 175 Ariz. 296, 300, 855 P.2d 1357, 1361 (1993) (stating that the court's authority is to affirm, reverse, modify, or remand to the trial court). We review the record to determine whether there is a reasonable basis for the ruling made by the trial court. *Sears Roebuck & Co. v. Walker,* 127 Ariz. 432, 437, 621 P.2d 938, 943 (App.1980). We are free to affirm an award of summary judgment if it is correct for any reason. *Chi. Ins. Co. v. Manterola,* 191 Ariz. 344, 346, ¶7, 955 P.2d 982, 984 (App.1998); *see also* ARCAP 13(b)(3) (stating an appellee may raise issues presented in the trial court to affirm the judgment without filing a

cross-appeal, provided it does not seek to enlarge its rights or lessen those of the appellant).

Appellants state that this court's decision on the issue framed by the parties will determine who is the "successful" party under their settlement agreement for purposes of payment and they would not have signed the settlement agreement had they known this court could address a different legal issue. Even if parties agree to have the court address a particular legal issue, this court does not give advisory opinions or decide issues it is not required to reach in order to dispose of an appeal. *Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.,* 143 Ariz. 547, 548, 694 P.2d 835, 836 (App.1985).

4. The owner and contractor may establish a different billing cycle by specifically and conspicuously identifying that cycle in the contract and on each page of the plans. A.R.S. § 32–1129.01(B). A thirty-day billing cycle was part of the contract in this case.

tractor to make timely payments for labor, equipment and materials, damage to the owner, reasonable evidence that the construction contract cannot be completed for the unpaid balance of the construction contract sum or a reasonable amount *for retention.*

A.R.S. § 32–1129.01(D).

¶ 11 The first sentence of subsection D provides that a billing is deemed approved unless the owner issues a written statement "detailing those items in the billing" that are not approved. This expressly limits the approval or disapproval to the work covered in a particular bill. However, subsection D also sets forth grounds for disapproval that may not be attributable to a particular billing item, i.e., "unsatisfactory job progress," "failure to comply with other material provisions of the construction contract," "third party claims," and "construction cannot be completed for the unpaid balance . . . or a reasonable amount for retention."

¶ 12 Appellants cite to A.R.S. § 32–1129.01(E) to explain the discrepancy. They argue that an owner "may withhold from a progress payment only an amount that is sufficient to pay the direct expenses the owner reasonably expects to incur *to correct any items* set forth in writing pursuant to subsection D," A.R.S. § 32–1129.01(E), and that "any items" refers to items in the owner's written objection rather than items included in a billing application. Appellants contend it is unreasonable to find the Legislature intended to require an owner to continue to make progress payments after the owner becomes aware of defective work even if that work had previously been approved. Stonecreek counters that the trial court correctly determined that "any items" refers to the items in the billing statement because the first sentence of subsection D expressly limits written objections to items "in the billing."

¶ 13 When interpreting a statute, our primary goal is to "discern and give effect to legislative intent." *People's Choice TV Corp. v. City of Tucson,* 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002). Enactment of the Prompt Pay Act began as Senate Bill 1549, and the fact sheet prepared by Senate staff describes its purpose as a bill that "[e]stablishes time frames and procedures for the periodic payment of contractors, alters the time frame for the periodic payment of subcontractors and permits work stoppage for failure of a contractor or subcontractor to receive timely payment." Rev. Fact Sheet for S.B. 1549, 44th Leg., 2d Reg. Sess. (Ariz. Feb. 16, 2000).

¶ 14 Although both parties have cited fact sheets prepared during the legislative process in support of their positions,[5] neither the Senate nor House summaries reconcile the language in the first sentence of subsection D limiting disapproval to items in a specific billing with subsequent language in subsection E identifying grounds for disapproval that may not relate to a specific billing or may not occur until after payment of a previously billed item. Therefore, we look to other provisions of the Act.

¶ 15 "We construe the statute as a whole, and consider its context, language, subject matter, historical background, effects and consequences and its spirit and purpose." *State ex rel. Ariz. Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.,* 187 Ariz. 242, 247, 928 P.2d 666, 671 (App.1996). We attempt to give effect to all provisions of a statute and harmonize those provisions. *Sw. Gas Corp. v. Indus. Comm'n,* 200 Ariz. 292, 297, ¶ 16, 25 P.3d 1164, 1169 (App.2001).

¶ 16 As reflected by its title, the primary purpose of the Act is to establish a framework for ensuring timely payments from the owner to the contractor and down the line to the subcontractors and suppliers whose work has been approved. Unless the contract and each page of the plans clearly and conspicuously provide a longer time, an

---

5. The Senate Fact Sheet refers to data on prompt payment legislation and summarizes the proposed legislation. Paragraph 11 states an owner may withhold amounts "to correct *any items* causing a decline of a billing or estimate." Rev. Fact Sheet for S.B. 1549 (emphasis added).

The House of Representatives' summary of S.B. 1549 states an owner is allowed to withhold money from a progress payment "to correct any of the *non-approved* items." H.R. Summary S.B. 1549, 44th Leg., 2d Reg. Sess. (March 9, 2000) (emphasis added).

owner is required to pay progress payments within seven days after a billing is approved. A.R.S. § 32–1129.01(C). The contractor is then obligated to pay applications of its subcontractors and suppliers who have performed in accordance with the terms of their contracts "within seven days of receipt by the contractor ... of each progress payment or final payment, the full amount received for such subcontractor's work and materials supplied." A.R.S. § 32–1129.02(B).[6] A contractor's failure to make subcontractor payments is grounds for disciplinary action by the registrar of contractors. *Id.* Thus, the statute links progress payments from the owner to work done by the subcontractors and suppliers, whose particular work or supplies are billed in the contractor's application for that progress payment.

¶ 17 If an owner can simply wait until a later billing statement to disapprove and withhold payment for work already completed and deemed approved, the fourteen-day time limit in A.R.S. § 32–1129.01(D) and seven-day time periods in A.R.S. §§ 32–1129.01(C) and 32–1129.02(B) become ineffective. *Higginbottom v. State,* 203 Ariz. 139, 142, ¶ 13, 51 P.3d 972, 975 (App.2002) (quoting *Ruiz v. Hull,* 191 Ariz. 441, 450, ¶ 35, 957 P.2d 984, 993 (1998) (stating that when construing a statute, "we must read the statute as a whole and give meaningful operation to each of its provisions")).

¶ 18 Appellants argue, however, that defects in workmanship may not be readily discoverable until after a progress payment has been made and an owner should not be precluded from withholding progress payments after the defect is found. While we agree that a defect may not become apparent until after a progress payment is made and latent defects may not be discovered until after all construction is complete when full payment is required and has been made, we also find that requiring an owner to approve

or disapprove particular work and pay promptly does not deprive the owner of a remedy for latent defects. The owner retains all civil remedies for breach of contract and tort claims against a contractor. Certification of payment given during the course of construction is not regarded as conclusive that the work was properly performed. *See Blecick v. Sch. Dist. No. 18,* 2 Ariz.App. 115, 123, 406 P.2d 750, 758 (1965), *overruled in part on other grounds by Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984). In fact, section 7.4.4 of the parties' written contract provides that progress payments do not constitute acceptance of work that is not in accordance with contract requirements.

¶ 19 Further, during construction an owner may withhold progress payments on the grounds attributable to the general contractor for "unsatisfactory job progress," material breach, and the other generalized grounds set forth in subsection D. *See* A.R.S. § 32–1129.01(D). For example, an owner could disapprove payment for items such as those listed in Stonecreek's payment application for "site supervision," "project manager," or "profit and overhead" if progress was unsatisfactory or there had been a material breach of the contract and failure to correct defective work. The contract also contains provisions for a reasonable retainer before final payment which affords protection to the owner.

¶ 20 Accordingly, we find that the primary purpose of the Act is to require an owner to identify and disapprove those items that need to be corrected early in the process so that contractors, subcontractors, and suppliers receive prompt payment for their work. In keeping with that purpose, the trial court correctly held that withholding funds for allegedly defective work not covered in the invoice violated the Act.[7]

---

6. Even if an owner does not pay, the Act provides that performance by a contractor, subcontractor or supplier entitles them to payment from the party with whom they contract. A.R.S. § 32–1129.02(A). A contractor or subcontractor may withhold payment to its subcontractor or supplier on the same grounds that an owner is entitled to withhold progress payments. A.R.S. § 32–1129.02(C).

7. Appellants also argue that Stonecreek was in material breach of the contract and is estopped from seeking damages under the Act. However, the judgment makes clear that all claims other than the Prompt Pay claim were dismissed. Dismissal included Appellants' claim for breach of contract. Therefore, we do not consider this issue.

## CONCLUSION

¶ 21 We affirm the judgment and denial of Appellants' new trial motion.

CONCURRING: DONN KESSLER and PATRICK IRVINE, Judges.

