NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

SHEA CONNELLY DEVELOPMENT LLC, *Plaintiff/Appellant*,

*v.*

ARIZONA REGISTRAR OF CONTRACTORS, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0718
FILED 11-3-2020

———————————————

Appeal from the Superior Court in Maricopa County
No.  LC2019-000048-001
The Honorable Douglas Gerlach, Judge

**AFFIRMED**

———————————————

COUNSEL

DKL Law PLLC, Tempe
By David W. Lunn
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By John R. Tellier
*Counsel for Defendant/Appellee AZ Registrar*

Fidelis V. Garcia Attorney at Law, Chandler
By Fidelis V. Garcia
*Counsel for Defendant/Appellee Revive*

---

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

H O W E, Judge:

¶1 Shea-Connelly Development, LLC ("SCD") appeals the Arizona Registrar of Contractor's ("ROC") suspension of SCD's contractor's license for violations of Arizona's Prompt Pay Act and associated statutes, namely A.R.S. § 32–1183.[1] SCD argues that the administrative law judge ("ALJ") was required to consider offset, accord and satisfaction, and recoupment in making its disciplinary determination to the ROC. For the foregoing reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2 SCD and Revive Construction and Cleaning, LLC ("Revive") entered construction subcontracts for two different large-scale construction projects. In one, SCD subcontracted Revive to frame the Morningstar Glendale Project ("Glendale Project") in Glendale. In the other, SCD hired Revive to fix the framing done by a prior sub-contractor at two buildings at the Park Place I Project located in Fountain Hills, Arizona (the "Park Place Project") The Glendale Project subcontract provided that if Revive defaulted on any contract or subcontract with SCD, it would be deemed to have defaulted on all contracts or subcontracts with SCD. In anticipation of its work at the Glendale Project, Revive submitted an application for payment, SCD paid Revive $58,641.57, and Revive signed a "Conditional Waiver and Release on Progress Payment." Revive did not, however, perform any work at the Glendale Project.

¶3 The relationship between SCD and Revive deteriorated due to Revive's work on the Park Place Project. What was initially a $300,000 bid by Revive, turned into invoices totaling over $800,000. SCD sent superintendents to review Revive's work since Revive was well over budget and the work failed inspections. SCD continued to pay Revive's weekly invoices until late January, when Revive submitted an invoice for

---

[1] The operative statutes have been redesignated and renumbered from A.R.S. §§ 32–1129 to 32–1129.07 as A.R.S. §§ 32–1181 to 32–1188.

work done solely on things that failed inspection. SCD did not object to that invoice or any subsequent invoices in writing but considered both the Park Place and Glendale Projects subcontracts terminated. At the time of termination, SCD owed Revive for four outstanding invoices from the Park Place Project, #97, #100, #101, and #102, totaling $68,783.25.

¶4 Revive filed a complaint with the ROC claiming SCD owed $68,783.25 for the outstanding invoices. The ROC notified SCD that a complaint had been filed against it, explaining that SCD was "free to raise any issues or affirmative defenses to this complaint . . . ." SCD timely replied that it did not owe Revive because it had made an accord and satisfaction with Revive that mitigated Revive's damages.

¶5 At the subsequent administrative hearing, SCD's owner, Bart Shea testified that SCD had terminated the Park Place Project subcontract because of Revive's inadequate workmanship, which SCD deemed a material default. Because of the cross-default provision in the Glendale Project subcontract, SCD considered Revive in default on the Glendale Project and terminated that subcontract as well. SCD then requested Revive return the Glendale Project payment. Revive refused, and Shea considered those funds payment for the outstanding invoices from January and February in the Park Place Project. Shea further testified that to make the Park Place Project pass inspection, SCD hired another subcontractor to fix Revive's work. Shea argued that any amount required to fix Revive's work would offset, or be deducted from, the invoice amount. Therefore, SCD did not owe Revive, but Revive owed SCD.

¶6 Revive's witness, Rogelio Vazquez, declined to answer questions about the Glendale Project. He did, however, verify the contracts and the unpaid Park Place Project invoices. He further testified that SCD notified Revive that it would not pay the invoices but did not provide any written explanation.

¶7 The ALJ found that SCD provided no written evidence that it paid invoices #97, #100, #101, and #102. She further found that SCD provided no authority to establish that the Registrar considers offsets when assessing whether a contractor has violated the Prompt Pay Act. She made no findings, however, whether she found any witnesses credible, nor any other finding related to offset, recoupment, or accord and satisfaction. The ALJ consequently found that SCD violated both A.R.S. § 32–1154(A)(10) and Arizona's Prompt Pay Act. Pursuant to A.R.S. § 32–1154(B)(3), the ALJ recommended the ROC suspend SCD's license until it paid Revive the amount of the invoices it owed, and the ROC adopted the recommendation.

The superior court affirmed the ROC determination on factual grounds, inferring the material facts at issue to affirm the ALJ. SCD timely appealed.

**DISCUSSION**

**¶8**           SCD appeals the suspension of its license under A.R.S. 32–1154(B)(3), arguing that the ALJ's recommendation and ROC's determination improperly precluded evidence of offset, recoupment, and accord and satisfaction. We review an administrative action based on an interpretation of law *de novo. See Forest Guardians v. Wells*, 201 Ariz. 255, 259 ¶9 (2001).

**¶9**           We interpret statutes to give effect to the legislature's intent, looking first to the statutory language itself. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383 ¶ 8 (2013). When the language is clear and unambiguous, and thus subject to only one reasonable meaning, we apply the language without using other means of statutory construction. *State v. Gomez*, 212 Ariz. 55, 57 ¶ 11 (2006). Specifically, "[s]tatutory construction requires that provisions of a statute be read and construed in the context of related provisions and in light of its place in the statutory scheme." *Id*. at 176. In doing so, we give effect to all provisions of a statute and harmonize those provisions. *Sw. Gas Corp. v. Indus. Comm'n*, 200 Ariz. 292, 297 ¶ 16 (App. 2001).

I.          **The ALJ did not abuse her discretion when she rejected SCD's claim that it had an accord and satisfaction with Revive.**

**¶10**         SCD argues that the ALJ abused her discretion when she did not consider evidence that it had an accord and satisfaction agreement with Revive that constituted payment of the invoices at issue. SCD cannot rely on accord and satisfaction here, however.

**¶11**         The Prompt Pay Act requires a contractor to pay the full amount of an invoice for work done and material supplied within seven days of the invoice being certified and approved. A.R.S. §§ 32–1183(A), (B); *see also* A.R.S. § 32–1182(A), (D). An invoice is deemed certified and approved 14 days after the contractor receives the invoice if the contractor does not prepare and issue a written statement detailing the reasons for withholding payment. A.R.S. §§ 32–1183(A), (B), (E); *see also* A.R.S. § 32–1182(A), (D). SCD concedes that it did not provide written objections to the invoices as A.R.S. § 32–1183(E) required, and the invoices were duly deemed certified. SCD was therefore required to pay the invoices.

¶12        SCD could not use its alleged accord and satisfaction with Revive to escape its obligation to pay the certified invoices. A construction contract is "a written or oral agreement relating to the construction, alteration, repair, maintenance, moving or demolition of any building, structure or improvement or relating to the excavation of or other development or improvement to land," A.R.S. § 32–1181(A)(1), and under the Prompt Pay Act, a construction contract "shall not alter the rights of any contractor, subcontractor or material supplier to receive prompt and timely payments as provided under this article," A.R.S. § 32–1182(P). An "accord and satisfaction discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement." *Abbott v. Banner Health Network*, 239 Ariz. 409, 413 ¶ 11 (2016). By definition, an "accord and satisfaction" would alter a subcontractor or material supplier's statutory right to receive prompt payment under the Prompt Pay Act. Because recognizing an accord and satisfaction between SCD and Revive would limit Revive's ability to receive payment for work done on a construction contract in contravention of the express language of A.R.S. § 32–1182(P), the ALJ did not abuse her discretion by not considering evidence of an accord and satisfaction.

II.    **The ALJ was not required to consider any offsets or the defense of recoupment in determining whether the Prompt Pay Act was violated.**

¶13        SCD also argues that the ALJ abused her discretion by not considering evidence of an offsetting counterclaim or the equitable defense of recoupment in imposing sanctions under A.R.S. § 32–1154 (B)(3). An offset is an action or counterclaim a defendant might have brought in a separate action against the plaintiff and recovered a judgment. *W. J. Kroeger Co. v. Travelers Indem. Co.*, 112 Ariz. 285, 287 (1975). "[A] recoupment is a reduction by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." *Morris v. Achen Constr. Co., Inc.*, 155 Ariz. 507, 510 (App. 1986), *rev'd and vacated on other grounds*, 155 Ariz. at 512.

¶14        Neither offset nor recoupment apply in Prompt Pay Act proceedings before the ROC. The purpose of the Prompt Pay Act is to establish a statutory framework for ensuring timely payments from owners and contractors to subcontractors and suppliers, *Stonecreek Bldg. Co., Inc. v. Shure*, 216 Ariz. 36, 39 ¶ 16 (App. 2007), and proceedings before the ALJ are meant to adjudicate whether payments have been timely made or withheld for valid statutory objections. The proceedings are not venues for

comprehensive litigation over contract rights and obligations. *See id.*, 216 Ariz. at 40 ¶ 18 (regardless of obligations under the Prompt Pay Act, civil remedies for breach of contract or tort claims are unaffected). Allowing a contractor to bring a counterclaim or some right outside the Prompt Pay Act against a subcontractor or supplier to reduce the amount owed under certified invoices would inflate a simple prompt payment proceeding before an ALJ to full civil litigation better suited to the superior court.

**¶15** SCD argues that not allowing it to litigate these matters before the ALJ in the prompt pay proceeding violates its due process and is judicially inefficient. But due process is not violated when a party has "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Samiuddin v. Nothwehr*, 243 Ariz. 204, 211 ¶ 20 (2017). SCD can, if it chooses, bring any and all claims in civil litigation against Revive. *See Stonecreek*, 216 Ariz. at 40. SCD argues it may have to pay now only to have subsequent relief granted in its favor. But this does not violate due process because SCD retains full rights to bring its claim in a court of general jurisdiction. Furthermore, the Legislature has weighed any potential inefficiency in favor of timely payments to subcontractors and material suppliers, and we do not second-guess policy decisions. *See Kromko v. Arizona Bd. of Regents*, 216 Ariz. 190, 194 ¶ 21 (2007) (we do not substitute our "subjective judgment of what is reasonable under all the circumstances for that of the . . . Legislature.").[2]

---

[2] SCD requests that this Court award SCD its reasonable attorneys' fees and costs, pursuant to A.R.S. §§ 12-341 and 12-341.01, in connection with this appeal. We deny the request because SCD was not successful on appeal.

## CONCLUSION

¶16      For the reasons stated, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA