STARING, Presiding Judge:
¶1 Michael and Sandi Smith appeal the trial court's judgment that they violated Arizona's Prompt Pay Act ("APPA"), A.R.S. §§ 32-1129 to 32-1129.07, by failing to pay or object in writing to a payment application submitted to them for construction of their new home. The Smiths also argue the court erroneously concluded no issues remained in their lawsuit against the concrete subcontractor after granting the subcontractor summary judgment. Finally, they challenge the attorney fees awarded to both the general contractor and concrete subcontractor as unreasonable. For the following reasons, we affirm in part, reverse in part, and remand.
Factual and Procedural Background
¶2 In September 2010, the Smiths entered into an agreement with SK Builders, Inc., a licensed general contractor, for the construction of a home. The original contract price was $1,632,804. The house was approved for occupancy, subject to final inspection and corrections, on March 22, 2012.
¶3 On May 1, 2012, SK submitted a third amended version of Payment Application No. 19 ("PA 19") to the Smiths, claiming they owed $180,289.61.[1] Pursuant to the contract, SK had previously submitted and the Smiths had paid numerous monthly payment applications throughout the period of construction. In total, they made progress payments to SK in the amount of $1,506,314.76.
¶4 Before SK submitted the third amended version of PA 19, Ronald Robinette, architect and contract administrator, sent SK a letter advising that no further payments would be made until outstanding issues were resolved. According to Robinette, SK actually owed the Smiths money.
*523 ¶5 The outstanding issues to which Robinette referred concerned an interior concrete crack and the absence of wire mesh in the concrete that formed the back patio. SK had made repairs by injecting epoxy into the interior concrete crack. SK had also retained engineers to test the back patio, and they had concluded that, although the concrete deviated from the plans, it was in fact stronger than as specified in the plans. Based on the engineering findings, the concrete subcontractor, DC Concrete, refused to completely replace the back patio. PA 19 did not contain any request for payment related to the concrete work; the Smiths had already paid the full amount for the concrete work in previous payment applications, without objection.
¶6 The Smiths terminated the contract with SK effective May 5, 2012. Neither the Smiths, nor Robinette acting on their behalf, ever paid SK the amount requested in PA 19. Nor did the Smiths or Robinette object in writing to any of the items contained in PA 19. The Smiths continue to occupy the house and have not replaced the back patio.
¶7 SK sued the Smiths, claiming a violation of the APPA, breach of contract, and unjust enrichment. In the lawsuit, SK sought payment of the $180,289.61 claimed in PA 19, an additional $10,234.15, interest, and attorney fees. The Smiths counterclaimed against SK, also bringing a third-party complaint against SK's owner and some of SK's subcontractors, including DC, alleging breach of contract/defective workmanship, professional negligence, and fraudulent misrepresentation. Additionally, after several amendments to the third-party complaint, the Smiths included claims against Robinette and various project engineers. All claims except SK's claims against the Smiths were settled or otherwise resolved before trial.
¶8 The trial court granted summary judgment in favor of DC on the Smiths' breach of contract and fraudulent misrepresentation claims, finding no contractual privity between DC and the Smiths. Further, notwithstanding the Smiths' assertion that there were unresolved claims, the court ruled that no legal issues remained with respect to DC and, therefore, it was entitled to judgment pursuant to Rule 54(b), Ariz. R. Civ. P. The court awarded DC $259,092.70 in attorney fees, $5,299.34 in costs, and $30,564 in sanctions pursuant to Rule 68(g), Ariz. R. Civ. P. See Ariz. R. Civ. P. 68(g) (sanctions for party who rejects offer of judgment, but does not obtain more favorable judgment).
¶9 After a bench trial, the trial court found the Smiths had violated the APPA by failing to object in writing to any of the items in PA 19 within fourteen days of its submission. The court, however, found in favor of the Smiths on SK's breach of contract claim and dismissed SK's unjust enrichment claim. It entered judgment for SK for $180,289.61, and awarded SK $60,000 in attorney fees. The court later reduced the attorney fees awarded to SK to $50,000. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21 and 12-2101(A)(1).
Discussion
Payment Application No. 19
¶10 The Smiths first argue PA 19 did not comply with the requirements for a progress payment under the APPA because most of the work in PA 19 was completed outside the preceding thirty-day billing cycle. They also argue that PA 19 was at most a "final billing" that did not impose the same obligations and time limits on them as a progress payment application.
¶11 We review issues of statutory interpretation and application de novo. Obregon v. Indus. Comm'n , 217 Ariz. 612, ¶ 9, 177 P.3d 873 (App. 2008). When interpreting a statute, our primary goal is to "discern and give effect to legislative intent." People's Choice TV Corp. v. City of Tucson , 202 Ariz. 401, ¶ 7, 46 P.3d 412 (2002). Ordinarily, we give words in statutes their commonly accepted meaning. Obregon , 217 Ariz. 612, ¶ 11, 177 P.3d 873. "If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." Hayes v. Cont'l Ins. Co. , 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). And, we construe a statute in context with other related provisions and its place in the statutory scheme.
*524 Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div. , 177 Ariz. 414, 416, 868 P.2d 997, 999 (App. 1993).
¶12 The APPA requires an owner to make progress payments to a contractor "on the basis of a duly certified and approved billing or estimate of the work performed and the materials supplied during the preceding thirty day billing cycle." 2000 Ariz. Sess. Laws, ch. 233, § 4.[2] Payment must be made within seven days after the billing or estimate is certified and approved. Id. The "billing or estimate shall be deemed approved and certified fourteen days after the owner receives [it] unless before that time the owner or the owner's agent prepares and issues a written statement detailing those items in the billing or estimate that are not approved and certified." Id. An owner may object to "a billing or estimate or portion of a billing or estimate for unsatisfactory job progress, defective construction work or materials not remedied, disputed work or materials, [or] failure to comply with other material provisions of the construction contract...." Id. "Payment shall not be required pursuant to [the APPA] unless the contractor provides the owner with a billing or estimate for the work performed or the material supplied in accordance with the terms of the construction contract between the parties."[3] Id. Finally, "[a] construction contract shall not alter the rights of any contractor, subcontractor or material supplier to receive prompt and timely progress payments [under the APPA]." Id.
¶13 The Smiths received the final amended PA 19 from SK on May 1, 2012. As noted, they neither objected to the billing within the statutory fourteen-day period, nor paid it within the statutory seven-day period that followed. Although the APPA requires owners and contractors to comply with time limitations, see generally 2000 Ariz. Sess. Laws, ch. 233, § 4, the Smiths argue their compliance was unnecessary in this instance because PA 19 contained work completed outside the thirty-day billing cycle and, therefore, was not a progress payment application under the APPA, but rather a final billing.[4] But that is not the case. After SK submitted PA 19, the Smiths asked for a "final statement" of the remaining amount owed to SK. Further, Robinette issued "The Final Adjusted Contract Sum" more than one month after SK submitted PA 19. PA 19 was, therefore, a progress payment application. However, even though we reach this conclusion, our interpretation of the APPA leads us to further conclude SK was not entitled to relief for any items not falling within the preceding thirty-day billing cycle.
¶14 The APPA unambiguously provides that a contractor must base a progress payment "billing or estimate" on "the work performed and the materials supplied during the preceding thirty day billing cycle." 2000 Ariz. Sess. Laws, ch. 233, § 4. Thus, the plain language necessarily means that the APPA does not allow relief for work performed or materials supplied outside the preceding thirty-day billing cycle. See Farris v. Advantage Capital Corp. , 217 Ariz. 1, ¶ 5, 170 P.3d 250 (2007) ("A statute's plain language is the best indicator of legislative intent."); see also State v. Lychwick , 222 Ariz. 604, ¶ 9, 218 P.3d 1061 (App. 2009) (court ordinarily applies plain language without resorting to other interpretation methods).
¶15 Further, and contrary to SK's assertion, applying the APPA's plain language *525 with regard to the thirty-day billing cycle does not create an absurd result. See Lowing v. Allstate Ins. Co. , 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993) (a statute's language, "where clear and unequivocal, controls [a] statute's meaning unless it leads to absurd or impossible results"); see also Lychwick , 222 Ariz. 604, ¶ 9, 218 P.3d 1061 (recognizing absurdity and impossibility exceptions). Here, in support of its absurdity argument, SK gives the example of an appliance being purchased one month, stored the next month, installed the next month, and then tested as operational the next month. SK, however, ignores the fact that the APPA expressly allows progress payments to include either a "billing or estimate" of "work performed" and "materials supplied." 2000 Ariz. Sess. Laws, ch. 233, § 4. Thus, applying the APPA to SK's example, a contractor would comply with the APPA by submitting estimates of the amount of work performed and materials supplied concerning the appliance within each thirty-day billing cycle.
¶16 Moreover, SK overlooks the demanding standard for finding absurdity. "A result is 'absurd if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion.' " State v. Estrada , 201 Ariz. 247, ¶ 17, 34 P.3d 356 (2001) (quoting Perini Land & Dev. Co. v. Pima County, 170 Ariz. 380, 383, 825 P.2d 1, 4 (1992) ). Thus, finding absurdity contemplates extraordinary circumstances; a court may not disregard a statute's plain language and find absurdity merely because it believes the statute is unwisely enacted, results in awkward procedures, or leads to a harsh result. See Ariz. Const. art. III (Arizona's separation of powers); cf. City of Phoenix v. Butler , 110 Ariz. 160, 162, 515 P.2d 1180, 1182 (1973) (citation omitted) ("[I]t is not the function of the courts to rewrite statutes. The choice of the appropriate wording rests with the Legislature, and the court may not substitute its judgment for that of the Legislature."). Here, considering the plain language of the statute, including the legislature's decision to permit estimates of the work performed and the materials supplied in the preceding thirty-day billing cycle, requiring compliance with the plain language of the APPA's thirty-day billing provision does not lead to an absurd result.
¶17 SK also contends strict interpretation of the thirty-day billing cycle requirement is inconsistent with contractor-subcontractor relations. The APPA does link the owner's progress payments to work done by subcontractors billed in the contractor's payment application. Stonecreek Bldg. Co. v. Shure , 216 Ariz. 36, ¶ 16, 162 P.3d 675 (App. 2007). And, a subcontractor is not obligated to provide the contractor with payment applications limited to the preceding thirty-day billing cycle. 2000 Ariz. Sess. Laws, ch. 233, § 5. Therefore, as provided for by the plain language of the statute, the burden is on the contractor either to estimate the work performed and materials supplied by subcontractors during each thirty-day cycle, or to contractually obligate their subcontractors to submit their respective billings and estimates on time.
¶18 The "primary purpose of [the APPA] is to require an owner to identify and disapprove those items that need to be corrected early in the process so that contractors, subcontractors, and suppliers receive prompt payment for their work."[5] Stonecreek , 216 Ariz. 36, ¶ 20, 162 P.3d 675. As discussed, for contractors to benefit from the APPA, they must comply with the thirty-day billing cycle requirement. SK admitted that PA 19 was submitted "[f]or work that had been completed to the date of that application," and could have been completed in the year and one-half leading up to that date.[6]
*526 None of the items in PA 19 list the dates when the work was performed or the materials supplied, so it is unclear which items, if any, were within the applicable billing cycle. The Smiths identified and SK agreed that $13,744.61 of plumbing work and $17,777 of flooring work included in PA 19 were completed at least before the certificate of occupancy was issued on March 22, 2012, and that PA 19 billed $27,596.80 for appliances that were purchased in 2011. Further, Robinette testified that none of the items billed in PA 19 occurred within the previous thirty-day cycle.
¶19 Neither the APPA, nor Arizona cases discussing it, expressly assign the burden of proof concerning the thirty-day billing cycle requirement. We conclude that the burden of proving compliance with the APPA's thirty-day billing cycle requirement falls on the contractor submitting a payment application. Cf. Yeazell v. Copins , 98 Ariz. 109, 116, 402 P.2d 541 (1965) ("The party who asserts a fact has the burden to establish the fact."). This is consistent with the obligation of the contractor to establish a violation of the APPA. Here, in finding in favor of SK, the trial court found SK "ha[d] proved all the elements required under the statute and the case law to establish a violation of the [APPA]." However, the court did not address the Smiths' thirty-day billing cycle argument. Thus, seeking relief under the APPA, SK met its burden of proving that PA 19 was submitted to the Smiths and not objected to or paid, but failed to prove compliance with the thirty-day billing cycle requirement. And, as noted, PA 19 included many items that were undisputedly outside the thirty-day cycle. Further, SK has failed to present any evidence refuting Robinette's testimony that none of the items billed in PA 19 occurred within the previous thirty-day cycle, only suggesting that maybe "touch-up" and "minor stuff" was done, without mention of its cost.
¶20 Accordingly, we reverse the trial court's judgment in favor of SK on its APPA claim.
Rule 54(b) Judgment
¶21 The Smiths next argue the trial court erroneously granted DC judgment pursuant to Rule 54(b), Ariz. R. Civ. P., arguing that there remained unresolved claims against DC.
¶22 Rule 54(b) provides that if an action involves multiple claims or parties, then "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay and recites that the judgment is entered under Rule 54(b)." In the context of Rule 54(b), a final judgment is "an ultimate disposition of an individual claim." Davis v. Cessna Aircraft Corp. , 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App. 1991) (final disposition of individual claim required). Further, a court's Rule 54(b) certification does not give this court jurisdiction on appeal if the judgment is not in fact final. Id. We review de novo a trial court's decision to apply Rule 54(b). Id.
¶23 On three occasions, the Smiths amended their third-party complaint against DC, with the last amendment dated almost three years before trial. The original third-party complaint alleged breach of contract/defective workmanship as count one, professional negligence as count two, and fraudulent misrepresentation as count three.[7] The Smiths only included DC in counts one and three. In subsequent amendments, the Smiths added additional parties and additional claims, but the only counts against DC remained breach of contract/defective workmanship and fraudulent misrepresentation. Ultimately, the Smiths included several additional "claims" against DC in their response to DC's motion for summary judgment regarding fraudulent misrepresentation. These new allegations were conspiracy, concealment, and aiding and abetting. The trial court declined to consider them or any other new allegation, reasoning that the Smiths "had three and one-half years to amend their complaint to add counts ... [and] [t]o permit [the Smiths] to maintain entirely new causes of action against *527 [DC] without proper notice and an informed chance to defend themselves would be grossly unfair." The court then granted DC summary judgment on both counts, and entered judgment in favor of DC pursuant to Rule 54(b).
¶24 At issue is whether any claims against DC other than breach of contract/defective workmanship and fraudulent misrepresentation remained. The Smiths argue additional claims were present in the case since at least the third amended third-party complaint, which they assert contained, at a minimum, claims for negligence, respondeat superior, and negligent misrepresentation. Although language about conspiracy and concealment was contained within the breach of contract/defective workmanship and fraudulent misrepresentation counts, the trial court entered judgment in favor of DC on the entirety of those two counts, which were the only counts directed towards DC.[8] The decision not to consider any additional allegations was within the trial court's discretion. See Walls v. Ariz. Dep't of Pub. Safety , 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (App. 1991). We thus conclude the court did not err in granting Rule 54(b) judgment in favor of DC.
Attorney Fees at Trial
¶25 Finally, the Smiths argue the awards of attorney fees to both SK and DC were unreasonable. They assert SK's award was unreasonable given the fact they prevailed on two of SK's three claims; and, therefore, they claim entitlement to an award of attorney fees. The Smiths argue DC's award was unreasonable because the trial court erroneously concluded the breach of contract and fraudulent misrepresentation claims were irreconcilably intertwined.
SK's Attorney Fees
¶26 We review an award of attorney fees for an abuse of discretion. Orfaly v. Tucson Symphony Soc'y , 209 Ariz. 260, ¶ 18, 99 P.3d 1030 (App. 2004). The successful party to an APPA claim is entitled to costs and reasonable attorney fees. 2000 Ariz. Sess. Laws, ch. 233, § 4. Further, the successful party to a contract action may be awarded reasonable attorney fees on that basis. A.R.S. § 12-341.01(A).
¶27 The trial court found in favor of the Smiths on SK's breach of contract claim, dismissed SK's unjust enrichment claim, and we have reversed the court's judgment in favor of SK on its APPA claim. Therefore, we reverse the award of attorney fees to SK, and remand to the trial court to award the Smiths their reasonable attorney fees.
DC's Attorney Fees
¶28 We review a trial court's decision on the amount of attorney fees awarded pursuant to A.R.S. § 12-341.01 for an abuse of discretion. Rudinsky v. Harris , 231 Ariz. 95, ¶ 27, 290 P.3d 1218 (App. 2012).[9] Section 12-341.01 allows attorney fees for the successful party "[i]n any contested action arising out of a contract" in order to "mitigate the burden of the expense of litigation to establish a just claim or a just defense." The phrase "arising out of a contract" in § 12-341.01 must be read broadly, and "an action is considered to have arisen out of contract when the plaintiff asserted a contract and the defendant successfully proved that no contract existed."
*528 ML Servicing Co. v. Coles , 235 Ariz. 562, ¶ 30, 334 P.3d 745 (App. 2014). An action also arises out of contract when the claim would not exist absent the contract. Id. ¶ 31. Even a tort claim will arise out of a contract "when the tort could not exist 'but for' the breach or avoidance of contract." Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc. , 198 Ariz. 10, ¶ 27, 6 P.3d 315 (App. 2000).
¶29 The Smiths alleged breach of contract against DC, which brought the matter within § 12-341.01. DC successfully proved no contract existed with the Smiths and successfully defended their fraudulent misrepresentation claim. The trial court awarded DC attorney fees, noting that the defense of one claim could not be separated from the defense of the other. The Smiths argue the court mistakenly concluded that the breach of contract claim was irreconcilably intertwined with the fraudulent misrepresentation claim and, therefore, DC's fee award should have been limited to the breach of contract defense. They further assert the facts necessary to grant summary judgment on the breach of contract claim were undisputed and available to all parties when the case started three and one-half years earlier. Thus, the Smiths essentially argue, DC should have brought its summary judgment motion sooner.
¶30 Here, we must determine whether the fraudulent misrepresentation claim could not exist but for the alleged contract. See ML Servicing , 235 Ariz. 562, ¶ 31, 334 P.3d 745. The Smiths alleged that DC breached a contractual agreement with them by failing to pour the concrete according to plans and specifications, and by knowingly performing and concealing defective work. Their fraudulent misrepresentation claim was based on the allegation that DC knew it performed defective work under the contract and did not intend to cure the defects in the concrete according to the contractually required plans and specifications. Thus, both the breach of contract claim and the fraudulent misrepresentation claim were intertwined in the counts against DC. The Smiths' fraudulent misrepresentation claim could not exist but for the alleged contract. Accordingly, the trial court did not abuse its discretion in awarding DC attorney fees.
Attorney Fees on Appeal
¶31 All parties request attorney fees on appeal. The Smiths and DC request attorney fees and costs pursuant to Rule 21(a), Ariz. R. Civ. App. P., and A.R.S. §§ 12-341 and 12-341.01. We award the Smiths their reasonable attorney fees incurred on appeal with respect to SK's claims against the Smiths. DC prevailed against the Smiths in this appeal; therefore, we award DC reasonable attorney fees against the Smiths. The Smiths may recover taxable costs against SK, and DC may recover taxable costs against the Smiths, each pursuant to A.R.S. § 12-341, upon compliance with Rule 21(b), Ariz. R. Civ. App. P. We deny SK's request for attorney fees.
Disposition
¶32 For the foregoing reasons, we affirm the trial court's Rule 54(b) judgment in favor of DC and award of attorney fees to DC, reverse the court's judgment that the Smiths violated the APPA and the court's award of attorney fees to SK, and remand to determine the Smiths' reasonable attorney fees at trial.

Among other things, PA 19 requested payment for wrought iron railings, electrical work, area drains, a garden gate, fireplace facing, doors and door frames, tile surrounds, flooring, appliances, final cleaning, and jobsite cleanup.

The legislature has amended the APPA since its original enactment, but the parties assert, and we agree, that in this instance the initial version is applicable because the project was designed before January 1, 2011, and the construction contract was entered before January 1, 2012. See 2010 Ariz. Sess. Laws, ch. 337, § 6. Accordingly, the statutory references in this opinion refer to provisions within the initial version of the APPA. The amendments do not affect our interpretation of the thirty-day billing cycle requirement discussed below.

Failure to comply with the statutory requirements of the APPA does not necessarily deprive the contractor of all remedy. A non-compliant contractor may be entitled at law by its contract or perhaps even in equity to payment for work performed and materials supplied.

The Smiths also argue PA 19 was insufficient because SK sent it to Robinette rather than the Smiths as purportedly directed. The Smiths have waived this argument on appeal because they raised it for the first time in their reply brief. See Ariz. R. Civ. App. P. 13(c) ; see also Dawson v. Withycombe , 216 Ariz. 84, ¶ 91, 163 P.3d 1034 (App. 2007).

The APPA began as Senate Bill 1549, and the fact sheet prepared by senate staff describes its purpose as a bill that "[e]stablishes time frames and procedures for the periodic payment of contractors, alters the time frame for the periodic payment of subcontractors and permits work stoppage for failure of a contractor or subcontractor to receive timely payment." S. Rev. Fact Sheet for S.B. 1549, 44th Leg., 2d Reg. Sess. (Ariz. Feb. 16, 2000).

PA 19 was originally submitted on March 28, 2012, resubmitted on April 30, 2012, and then submitted for the last time May 1, 2012. SK withdrew the original at Robinette's request to negotiate some changes and discounts.

The Smiths later asserted that each of these counts contained additional allegations of negligence, respondeat superior, and negligent misrepresentation.

A claim for relief requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Ariz. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to "give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved." Cullen v. Auto-Owners Ins. Co. , 218 Ariz. 417, ¶ 6, 189 P.3d 344 (2008) (quoting Mackey v. Spangler , 81 Ariz. 113, 115, 301 P.2d 1026 (1956) ). The Smiths explicitly pled negligence against other parties by distinctly making it a separate count, but did not do so against DC. And, although the Smiths asserted conspiracy, concealment, and aiding and abetting claims against DC in the Smiths' response to DC's motion for summary judgment regarding fraudulent misrepresentation, the response was not a pleading. See Ariz. R. Civ. P. 7.

The Smiths challenged the applicability of § 12-341.01 for the first time in a reply brief. Accordingly, we decline to consider this issue. See Ariz. R. Civ. App. P. 13(c) ("[R]eply brief ... must be strictly confined to rebuttal of points made in the appellee's answering brief."); Phelps v. Firebird Raceway, Inc. , 210 Ariz. 403, n.1, 111 P.3d 1003 (2005).