NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DESIGNEE LLC, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

HONDA AIRCRAFT COMPANY LLC, *Defendant/Appellee*.

TOWER INDUSTRIES LLC, *Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 19-0592

FILED 6-23-2020

Appeal from the Superior Court in Maricopa County
No. CV 2017-009441
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Bowman and Brooke LLP, Phoenix
By Travis M. Wheeler, David Lundmark
*Counsel for Defendant/Appellee, Honda Aircraft LLC*

Fredenberg Beams LLC, Phoenix
By Daniel E. Fredenberg, Christian CM Beams, Fredric D. Bellamy
*Counsel for Defendant/Appellee/Cross-Appellant, Tower Industries*

—————————————————

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

—————————————————

**C A M P B E L L**, Judge:

**¶1**         Designee, LLC ("Designee") appeals from the superior court's judgment in favor of Honda Aircraft Company, LLC ("Honda") and Tower Industries, LLC ("Tower") (collectively, "the Defendants"). Tower cross-appeals from the court's denial of its request for attorneys' fees. For the following reasons, we affirm.

**BACKGROUND**

**¶2**         In October 2006, Designee contracted with Honda to purchase a HondaJet Aircraft ("the aircraft"), still in development, for a base price of $3,650,000, subject to escalators. Designee was required to pay four deposits over time totaling $600,000, with the balance due at delivery.

**¶3**         The contract required Honda to provide Designee with the aircraft's final specifications, and delivery was tentatively set for 2012. As relevant here, Designee's deposit payments were non-refundable unless Honda changed the aircraft's performance specifications without Designee's approval.

**¶4**         At the same time, the contract permitted Honda to cancel if Designee failed to make any of the scheduled payments or refused delivery and allowed Honda to retain all deposits as liquidated damages.

**¶5**         Honda was unable to deliver the aircraft in 2012, and the delay stretched into years. In 2015, Designee told Tower, the Honda dealer,

2

that it no longer needed the plane and intended to sell it upon delivery. Tower replied that the aircraft's current market price far exceeded Designee's contract price, so Designee would not lose money if it decided to sell the plane. According to Designee, Tower also offered to buy the aircraft from Designee for at least the contract price if Designee did not want the aircraft when it was finally delivered.[1]

¶6            In 2016, Honda changed the aircraft's performance specifications, which arguably would have allowed Designee to cancel the contract and receive a refund of its deposits. But Designee did not assert its right to cancel the contract, and instead made its third deposit.

¶7            Honda finally announced it would deliver the aircraft in July 2017 and made demand for the fourth deposit payment. When that date arrived, Honda sent Designee a notice of default for failing to make the fourth payment. In response, Designee notified Honda that it would not take delivery of the aircraft and demanded the return of its $425,000 in deposits. At that point, Honda notified Designee it was terminating the contract and keeping the $425,000 as liquidated damages.

¶8            Meanwhile, Designee filed a lawsuit against Honda and Tower, alleging that: (1) Honda "implicitly refused to reasonably cooperate in any attempted sale" of the aircraft to a third party (breach of the covenant of good faith and fair dealing); (2) Designee detrimentally relied on Tower's offer to buy the aircraft for at least the purchase contract price (promissory estoppel); (3) the Defendants engaged in unfair and deceptive trade practices (unfair and deceptive trade practices); (4) the Defendants conspired against Designee (conspiracy); (5) the purchase contract's liquidated damages provision is an unenforceable penalty and Designee is entitled to a return of the $425,000 in deposits (restitution); and (6) Honda unfairly retained the deposit money (unjust enrichment). In response, Honda filed a cross-complaint against Designee for breach of contract.

¶9            Eighteen months into the litigation, the parties cross-moved for summary judgment (Honda sought summary judgment both on Designee's complaint and its counterclaim for breach of contract). After

_____

[1]      In its second amended complaint, Designee alleged that Cutter Aviation Southwest, LLC ("Cutter") and Tower both offered to buy the aircraft for Designee's purchase price. Designee later stipulated to dismissing Cutter from the case with prejudice.

briefing and oral argument, the superior court granted the Defendants' motions for summary judgment and denied Designee's motion.

¶10            Having prevailed, Tower applied for its attorneys' fees, and both Tower and Honda requested their taxable costs. Finding Tower was not entitled to an award of attorneys' fees under any of the claims brought by Designee (promissory estopped, unfair and deceptive trade practices, and conspiracy), the superior court denied Tower's request for attorneys' fees but awarded the Defendants their taxable costs. Designee and Tower timely appealed.

## DISCUSSION

### I.     Summary Judgment Rulings

¶11            Designee raises numerous challenges to the superior court's summary judgment rulings. When reviewing a superior court's grant or denial of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). "We determine de novo whether any genuine issues of material fact exist and whether the [superior] court correctly applied the law."[2] *Diaz v. Phoenix Lubrication Service, Inc.*, 224 Ariz. 335, 338, ¶ 10 (App. 2010); *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). In so doing, we will affirm the court's rulings if they are correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

### A.     Honda's Contract Counterclaim and Designee's Claims for Unjust Enrichment and Restitution

¶12            Arguing the superior court improperly found the purchase contract's liquidated damages provision was enforceable as a matter of law, Designee contends its challenge to the reasonableness of the liquidated damages raised a question of fact that should have been submitted to a jury. *See Green Park Inn, Inc. v. Moore*, 562 S.E.2d 53, 59 (N.C. App. 2002) ("Whether a liquidated damages amount is a reasonable estimate of the damages that would likely result from a default is a question of fact."). Whether a contract provides for liquidated damages or a penalty is a question of law we review de novo. *See Seven Seventeen HB Charlotte Corp.*

---

2            The parties agree that the contract's choice of law provision controls and North Carolina law governs the purchase agreement.

*v. Shrine Bowl of the Carolinas, Inc.*, 641 S.E.2d 711, 714 (N.C. App. 2007) (explaining the enforceability of a liquidated damages provision is a question of law whereas a determination concerning the amount of actual damages is a question of fact). The party seeking to invalidate a liquidated damages provision bears the burden of establishing it is unenforceable. *Id.* at 713–14.

¶13        The contract expressly set forth the remedies available in the event of a breach. If Honda proposed a change in performance specifications, Designee had the right to declare the change unacceptable, cancel the contract, and demand the  return of all deposits. On the other hand, if Designee breached by failing to make a scheduled installment payment or refused the delivery, as happened here, the contract gave Honda the right to retain the deposit payments, "not as a forfeiture but as liquidated damages." In entering into the contract, Designee expressly acknowledged:

> "[I]t would be difficult to determine the actual damages [Honda] w[ould] suffer because of a [Designee] default, because [Honda's] business model depends on high-volume production to control its costs and overhead, including volume-based pricing terms in contract with vendors and suppliers, and because [Honda] would need to incur remarketing and reconfiguration costs for the Aircraft. . . . [T]he liquidated damages are an accurate, fair and reasonable estimate of the damages [Honda] [would] likely [] incur as a result of any default leading to termination of this Agreement.

¶14        "Under the fundamental principle of freedom of contract," parties may stipulate to the amount of damages recoverable in the event of a breach. *Seven Seventeen HB Charlotte Corp.*, 641 S.E.2d at 713 (internal quotation omitted). While "courts will generally enforce such an agreement," *id.*, the amount of stipulated damages must be "reasonable in light of the anticipated *or* actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." N.C. Gen. Stat. § 25-2-718(1) (emphasis added). In other words, a liquidated-damages provision reasonably related to *either* anticipated *or* actual damages is generally enforceable, but "[a] term fixing unreasonably large liquidated damages is void as a penalty." *Id.*

¶15        Although conflicting evidence regarding the reasonableness of estimated damages *may* present a jury question, here, Designee failed to

demonstrate any genuine factual dispute. *See Green Park Inn, Inc.*, 562 S.E.2d at 59 (concluding party's statement that there was no discussion regarding the reasonableness of the liquidated damages provision at contract formation was insufficient to create a genuine issue of material fact and affirming the superior court's summary judgment finding that the contract's liquidated damages provision was enforceable).

¶16　　　First, by executing the contract, Designee expressly and unambiguously agreed that the actual damages suffered by Honda, in the event Designee defaulted, were incalculable at signing and the deposits represented a reasonable approximation of the losses Honda would likely incur. Second, given the facts of this case, in which the aircraft had not been fully designed, much less built, and no supply chain or market had been established, it was difficult to predict with any certainty the damages Honda would incur if Designee defaulted. Third, as found by the superior court, the liquidated damages at issue, amounting to less than 10% of the aircraft's value,[3] were a reasonable estimate of damages that could be caused by Designee's breach (including hangarage, remarketing, and delivery expenses). *See Aero Consulting Corp. v. Cessna Aircraft Co.*, 867 F. Supp. 1480, 1482, 1493–94 (D. Kan. 1994) (finding a purchase agreement's liquidated damages provision, which permitted a plane manufacturer to retain $425,000 in deposits upon the purchaser's breach notwithstanding that the manufacturer subsequently sold the aircraft to another customer for nearly the same price, was enforceable given the deposits were "slightly less than ten percent of the total purchase price of the aircraft" and "the lengthy period of time required for production of such an aircraft and the uncertainties associated with supply, demand, and costs for such aircraft" made it "difficult to determine with certainty the actual damages"); *see also Rodriguez v. Learjet, Inc.*, 946 P.2d 1010, 1012–15 (Kan. Ct. App. 1997) (finding a purchase agreement's liquidated damages provision, which permitted a plane manufacturer to retain $250,000 in deposits upon the purchaser's breach, was enforceable despite the manufacturer's subsequent sale of the aircraft for a greater profit). Finally, as Honda notes, Designee neither produced evidence challenging the reasonableness of the *estimated* damages nor "advance[d] any argument about how Honda's damages could have been calculated prior to completion of the aircraft."

¶17　　　Although Designee asserts the liquidated damages provision is inequitable because Honda subsequently sold the aircraft for a higher

---

[3]　　　Applying a consumer price index adjustment in accordance with the express terms of the purchase agreement, by the time Designee defaulted, the base price of the aircraft had risen from $3,650,000.00 to $4,334,073.50.

price, liquidated damages may be awarded even when no actual damages arose from the breach. *Handex of Carolinas, Inc. v. County of Haywood*, 607 S.E.2d 25, 37 (N.C. App. 2005) (because a liquidated damages provision is enforceable if its estimation of breach-related damages was reasonable when the parties executed the contract, liquidated damages may be awarded "even if no actual damages arise from the breach"); *see also Green Park Inn, Inc.*, 562 S.E.2d at 58 ("The question whether damages are difficult of ascertainment is to be determined by a consideration of the status of the parties at the time they enter into the contract, and not at the time of the breach."). Because the actual breach-related damages were incalculable and the anticipated damages were reasonable, even assuming the absence of actual damages (a matter Honda disputes), Designee has failed to demonstrate a genuine issue of material fact regarding the enforceability of the liquidated damages provision. In sum, the superior court did not err by holding, as a matter of law, that the purchase contract's liquidated damages provision was enforceable.

¶18        Having so found, the court correctly determined that Honda was entitled to summary judgment on Designee's claims for restitution and unjust enrichment, as well as its counterclaim for breach of contract. *See Booe v. Shadrick*, 369 S.E.2d 554, 555–56 (N.C. 1988) (explaining restitution is a remedy for unjust enrichment, and the equitable doctrine of unjust enrichment has no application when "there is a contract between the parties that governs the claim").

## II.        Claims for Promissory Estoppel, Unfair and Deceptive Trade Practices, and Conspiracy

¶19        Designee contends the superior court improperly found that Tower's alleged oral offer to buy the aircraft was unenforceable as a matter of law. Designee correctly concedes, however, that a contract for the sale of goods over $500 must be in a signed writing. *See* N.C. Gen. Stat. § 25-2-201(1) ("[A] contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."). Nonetheless, Designee argues the alleged offer was enforceable under a theory of promissory estoppel, and that  the disputed facts concerning the alleged offer thus precluded summary judgment in Tower's favor.

¶20        To prove promissory estoppel, a party must show he reasonably relied on another party's promise to his detriment. *Bumpers v.*

*Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 227 (N.C. 2013). Designee alleges it detrimentally relied on Tower's offer to purchase the aircraft at cost by paying another $175,000 deposit and agreeing to performance specification changes based on Tower's assurances, notwithstanding that it could have refused the amendments, terminated the contract, and demanded a return of all deposits made. But Designee's principal, Larry Barels, admitted in his affidavit that he "did not bother to read . . . the revised specifications." And during his deposition, Barels acknowledged that after the alleged promise, he sent Tower a "counteroffer." Wanting to capitalize on its equity position, Designee asked if Tower would purchase the aircraft for more than the purchase contract price and "split the arbitrage value." Absent such a contract, Designee planned to "remarket" the aircraft and "move aggressively" to find another buyer. Tower never responded to the counteroffer. Designee also admitted it never demanded that Tower buy the aircraft pursuant to the alleged promise.

¶21        Moving for summary judgment on Designee's promissory estoppel claim, Honda argued that North Carolina does not recognize promissory estoppel as an affirmative cause of action. *See Home Elec. Co. of Lenoir, Inc. v. Hall and Underdown Heating & Air Conditioning Co.*, 358 S.E.2d 539, 542 (N.C. App. 1987) (explaining the doctrine of promissory estoppel "has only been permitted in North Carolina for defensive relief"). Designee countered that Arizona law governed the promissory estoppel claim "because choice of law provisions are inapplicable to a claim sounding in equity." While ultimately finding the statute of frauds barred Designee's promissory estoppel claim, the superior court expressly noted Designee did not "contest" Honda's assertion that the claim was not cognizable under North Carolina law.

¶22        On appeal, Designee abandons its claim that Arizona law governs this issue, *see Best v. Edwards*, 217 Ariz. 497, 504 n.7, ¶ 28 (App. 2008) (issues not raised in opening brief are waived), and argues for the first time that North Carolina law permits an affirmative cause of action predicated on the theory of promissory estoppel. By failing to raise this argument in the superior court, Designee waived it on appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) (failure to raise an issue in the superior court waives the claim on appeal). Moreover, while Designee contends the law "on this subject is somewhat confused," it acknowledges that North Carolina has only applied the doctrine of promissory estoppel "in a defensive situation." *See Home Elec. Co. of Lenoir, Inc.*, 358 S.E.2d at 541.

¶23        Nonetheless, procedural bars notwithstanding, Designee failed to present prima facie evidence of promissory estoppel. Taking

everything Designee alleges to be true, Tower offered to buy the aircraft for the purchase contract price, and Designee proposed a counteroffer and told Tower it would find another buyer if Tower refused to share the aircraft's arbitrage value. Even if Tower initially offered to buy the aircraft for the purchase contract price, Designee rejected that offer by making a counteroffer, relieving Tower of any obligation to perform. *See Quantum Corporate Funding, Ltd. v. B.H. Bryan Building Co., Inc.*, 623 S.E.2d 793, 798 (N.C. App. 2006) (explaining one party's offer is not binding when the other party responds with a counteroffer).

¶24 Moreover, Designee only claims that Tower offered to buy the aircraft for Designee's contracted price. While Designee argues that Tower's offer relieved it of its obligation to pay the balance of the contract purchase price at delivery, the undisputed facts reflect that Designee breached the contract *before* delivery by failing to pay the third $175,000 installment. Furthermore, although Designee contends it detrimentally relied on Tower's offer by paying the second $175,000 installment and executing amendments rather than terminating the purchase agreement and recouping the deposit monies, its purported reliance must be reasonable. Here, it was not reasonable because: (1) Barels admitted he never "bothered" to read the relevant documents, *see Bumpers*, 747 S.E.2d at 227 ("Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate.") (internal quotation omitted), and (2) Tower's alleged offer to buy the multi-million-dollar aircraft was never reduced to writing. In contrast, Designee's obligation was the subject of a detailed written contract. Accordingly, the superior court did not err by granting summary judgment in favor of the Defendants on Designee's claim of promissory estoppel.

¶25 For the same reasons, Designee's claim that the Defendants engaged in unfair and deceptive trade practices also fails. To establish a prima facie claim for unfair trade practices, a plaintiff must demonstrate: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. N.C. Gen. Stat. § 75-1.1; *Bumpers*, 747 S.E.2d at 226-27. To show the requisite proximate cause for an injury predicated on a false representation, the plaintiff must demonstrate both actual and reasonable reliance. *Bumpers*, 747 S.E.2d at 226-27.

¶26 Designee failed to demonstrate both actual and reasonable reliance on Tower's alleged offer. By failing to do so, Designee did not establish a prima facie claim for unfair trade practices. Because North Carolina does not recognize a separate civil action for conspiracy

independent of an underlying tort claim against the alleged conspirators, Designee's conspiracy claim, which was predicated on its unfair trade practices claim, fails as well. *See Piraino Bros., LLC v. Atlantic Fin. Group, Inc.*, 712 S.E.2d 328, 333–34 (N.C. App. 2011) ("It is well established that there is not a separate civil action for civil conspiracy in North Carolina. Instead, civil conspiracy is premised on the underlying act.") (internal quotations and citations omitted). Therefore, the superior court did not err by granting summary judgment in favor of the Defendants on Designee's claims of unfair trade practices and conspiracy.

## III.    Claim for Breach of the Covenant of Good Faith and Fair Dealing

¶27        Finally, Designee argues the superior court incorrectly found that North Carolina does not recognize a discrete claim for breach of the implied covenant of good faith and fair dealing independent of a breach of contract claim. Designee asserts that Honda breached the implied covenant of good faith and fair dealing by enforcing the purchase agreement's liquidated damages provision—retaining the deposited monies and refusing to excuse Designee's non-performance under the contract.

¶28        Designee's contentions are unfounded. First, Designee's claim for breach of the implied covenant of good faith and fair dealing, as set forth in its amended complaints, was predicated on Honda's alleged refusal to facilitate Designee's sale of the aircraft to a third party, not its enforcement of the liquidated damages provision. By failing to raise the enforcement argument in the superior court, Designee waived the issue on appeal. *See Trantor*, 179 Ariz. at 300. Second, as found by the superior court, a party does not breach the implied covenant of good faith and fair dealing by enforcing the express terms of a contract. Rather, a party breaches the covenant of good faith and fair dealing by preventing the other party from receiving the benefits of the agreement. *Bicycle Transit Authority, Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985) (internal citation omitted).

¶29        Here, neither Honda nor Tower entered an oral contract to waive Designee's performance under the purchase agreement. At most, Tower offered to buy the aircraft for the contract price if Designee no longer wanted it at delivery. As Designee concedes on appeal, a contract for the sale of goods over $500 must be evidenced in a signed writing. N.C. Gen. Stat. § 25-2-201(1). Accordingly, a claim alleging a breach of an oral offer to purchase the multi-million-dollar aircraft is barred by the statute of frauds. Finally, by making a counteroffer, which was not accepted, Designee renounced Tower's alleged offer. Therefore, the superior court did not err

10

by granting summary judgment in favor of Honda on the claim for breach of the covenant of good faith and fair dealing.

## IV.   Attorneys' Fees

¶30   Tower cross-appeals the superior court's denial of its request for attorneys' fees. Specifically, Tower contends the court improperly found it did not qualify for a fee award under A.R.S. § 12-341.01(A).

¶31   Although the purchase agreement does not provide for an award of attorneys' fees, Tower requested attorneys' fees under A.R.S. § 12-341.01 (providing for a discretionary award of fees for a matter "arising out of a contract."). Designee objected, asserting, among other things, that North Carolina law governs the purchase agreement, and therefore A.R.S. § 12-341.01 is inapplicable. In response, Tower countered that it was not a party to the contract and, therefore, not bound by its choice-of-law provision.[4]

¶32   Without determining which state's law applied, the superior court denied Tower's request, finding Arizona did not permit Tower to recover attorneys' fees on any claims asserted by Designee. We likewise need not determine which law to apply because, in either case, Tower is not entitled to an attorneys' fees award.[5]

¶33   Under A.R.S. § 12-341.01(A), a court may award reasonable attorney's fees to the successful party in "any contested action arising out of a contract." "Whether a cause of action arises out of contract is a question of law we review de novo." *Caruthers v. Underhill*, 230 Ariz. 513, 526, ¶ 58 (App. 2012).

¶34   To determine whether a claim "is one arising out of a contract," we consider "the nature of the action and the surrounding circumstances," not the form of the pleadings. *Marcus v. Fox*, 150 Ariz. 333, 335 (1986) (internal quotations omitted). We also broadly construe the statutory language, such that an action "arises out of contract when the

---

4   Tower also asserted, for the first time, that it was entitled to attorneys' fees pursuant to A.R.S. § 12-349. On appeal, however, Tower expressly disclaims any challenge to the denial of its attorneys' fees request on that basis.

5   It is undisputed that North Carolina law does not provide for an award of attorneys' fees to the prevailing party in a contract-based action.

claim would not exist absent the contract." *SK Builders, Inc. v. Smith*, 246 Ariz. 196, 204–05, ¶ 28 (App. 2019), *overturned on other grounds by* 2019 Ariz. Sess. Laws, ch. 145 (S.B. 1397) (April 29, 2019). Applying this broad construction, an action is deemed to arise out of contract "when the plaintiff asserted a contract and the defendant successfully proved that no contract existed." *Id.* (internal quotations omitted). Likewise, even a tort claim is considered to "arise out of a contract when the tort could not exist 'but for' the breach or avoidance of contract." *Id.* (internal quotations omitted); *see also Marcus*, 150 Ariz. at 335 (explaining tort claims that are "intrinsically related to [a] contract" arise out of contract for purposes of A.R.S. § 12-341.01(A)). Furthermore, a "defendant seeking attorneys' fees under A.R.S. § 12-341.01(A) need not be a party to the contract forming the basis for the award." *Chaurasia v. Gen. Motors. Corp.*, 212 Ariz. 18, 30, ¶ 47 (App. 2006).

¶35 Tower contends it is entitled to an attorneys' fees award because Designee would not have brought claims of promissory estoppel, unfair trade practices, and conspiracy against it but for the purchase contract. This assertion is undoubtedly true; but to qualify for an attorneys' fees award under A.R.S. § 12-341.01, "[t]he contract must be the essential basis of the action and not merely a factual predicate." *Caruthers*, 230 Ariz. at 526, ¶ 57. Here, the purchase contract was the underlying subject of Tower's communications with Designee, but Designee's claims against Tower do not directly flow from the purchase contract. Instead, Designee's claims arise out of Tower's alleged oral offer to buy the aircraft. While A.R.S. § 12-341.01 extends to implied contracts, a promise made enforceable by promissory estoppel, though similar to a binding contractual promise, "does not arise out of contract" within the meaning of A.R.S. § 12-341.01. *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 511, ¶¶ 44–45 (App. 2005). That is, attorneys' fees may be awarded under A.R.S. § 12-341.01(A) "for claims arising out of express and implied-in-fact contracts but not for claims arising out of implied-in-law contracts." *Id.* at 512, ¶ 47. Here, Tower is not entitled to attorneys' fees under A.R.S. § 12-341.01 for successfully defending against Designee's promissory estoppel claim.

¶36 Likewise, "[w]hen the duty breached is implied by law or is based on statute, that is, whe[n] the defendant would have a duty of care under the circumstances even in the absence of a contract, the claim does not arise out of a contract" for purposes of A.R.S. § 12-341.01(A). *Caruthers*, 230 Ariz. at 526, ¶ 57. As discussed, Designee's conspiracy claim is wholly dependent on its claim that Honda and Tower violated North Carolina's statute prohibiting unfair and deceptive trade practices. In the absence of a

purchase contract, North Carolina's statute barred Honda and Tower from engaging in any unfair or deceptive acts or practices in or affecting commerce. Therefore, Tower is not entitled to attorneys' fees for successfully defending against Designee's unfair trade practices and conspiracy claims.

## CONCLUSION

¶37　　　　For the foregoing reasons, we affirm. Designee requests an award of its attorney's fees and costs incurred on appeal, which we deny. Tower requests an award of its attorneys' fees and costs incurred on cross-appeal, which we likewise deny. However, we award Honda its costs incurred on appeal and Designee its costs incurred on cross-appeal, conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:　AA